**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JADED MAHELET RUVALCABA MARTINEZ, | ) ) ) | |
| Petitioner, | ) ) | Case No.: |
| v. | ) ) ) | |
| PETER VALDEZ CAHUE | ) ) ) ) | |
| Respondent. | ) ) | |

---

## VERIFIED PETITION FOR RETURN OF MINOR CHILD TO MEXICO AND FOR IMMEDIATE ISSUANCE OF SHOW CAUSE ORDER TO RESPONDENT

Petitioner, Jaded Mahelet Ruvalcaba Martinez ("Ms. Martinez"), brings this Verified Petition against Respondent, Peter Valdez Cahue ("Mr. Cahue"), seeking the expedited return to Mexico of her nine-year-old son, A.J.M.C. ("AM"),[1] who has been wrongfully retained in Chicago by Respondent.

### INTRODUCTION

1. This Verified Petition is brought pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Hague Convention" or the "Convention"), T.I.A.S. No. 11,670 at 122,514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986), and the International Child Abduction Remedies Act, 22 U.S.C.

---

[1] In compliance with FRCP 5.2(a), only the initials of the child are included in this Petition and his name has been redacted from all exhibits. Also, only the child's year of birth has been disclosed. The month and date of his birth have been redacted from all exhibits.

§9001 et seq. ("ICARA"). 22 U.S.C. §9001, et seq. The United States and Mexico are the two Contracting States under the Convention referred to in this Petition.

2.      The objectives of the Convention are: "(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." T.I.A.S. No. 11,670 at 122,514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986). Pursuant to Article 11 of the Convention, "judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children." Thus, Ms. Martinez asks the Court for expedited review and hearing of this Petition.

3.      AM should be returned to Ms. Martinez in Mexico because, under the Convention and ICARA, a preponderance of evidence establishes that: (a) Mexico was AM's habitual residence on August 16, 2014, when Mr. Cahue failed to return AM to Mexico and continued to wrongfully retain AM in the United States; (b) Ms. Martinez was exercising her Mexican custody rights at the time Mr. Cahue wrongfully retained AM in the United States; and (c) none of the narrow exceptions to mandatory return under the Convention applies.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under 22 U.S.C. § 9003(a), as it is an action arising under the Convention, and under 28 U.S.C. § 1331, because this is a civil action arising under a federal law and a treaty of the United States.

5.      This Court has personal jurisdiction over Respondent because he currently resides within the Northern District of Illinois and AM is being wrongfully detained within this District. Venue is proper pursuant to 28 U.S.C. § 1391(b) and 22 U.S.C. § 9003(d).

## FACTUAL BACKGROUND

6.      Ms. Martinez is a permanent resident of Mexico and currently resides at Troje San Bartolo 104, Fraccionamiento Trojes de San Cristobal, Jesus Maria, Aguascalientes, Mexico. Ms. Martinez is the natural mother of AM.

7.      Upon information and belief, Mr. Cahue, a citizen of the United States, currently resides at 6744 South Tripp Avenue, Chicago, Illinois 60629.  Mr. Cahue is the natural father of AM.

8.      Ms. Martinez and Mr. Cahue have never been married to each other.

9.      AM was born in Oak Lawn, Illinois in 2006.  AM has dual citizenship in Mexico and the United States. (See redacted copy of AM's birth certificate, attached hereto as **Exhibit A.**)

10.      From approximately 2002 through 2009, Ms. Martinez and Mr. Cahue were in a relationship, living together for about one year in or about 2006 and again, for several months, in early 2009.

11.      In or about September 2009, Ms. Martinez filed multiple complaints of domestic violence and physical assaults against Mr. Cahue, at least one of which resulting in a formal Complaint for Aggravated Assault. (See Oak Lawn Police Incident Report, attached hereto as **Exhibit B** and Complaint for Aggravated Assault, attached hereto as **Exhibit C.**)

12.      In September 2009, Ms. Martinez petitioned for and received interim and plenary protective orders against Mr. Cahue from the Circuit Court of Cook County, Illinois, prohibiting Mr. Cahue from contacting Ms. Martinez or AM and granting physical care and possession of AM to Ms. Martinez.  (See Emergency Protective Order issued on September 1, 2009, attached

hereto as **Exhibit D** and Protective Order issued on October 8, 2009, attached hereto as **Exhibit E.**)

13.     On February 24, 2010, Ms. Martinez and Mr. Cahue entered into an agreement in which Mr. Cahue agreed not to contest Ms. Martinez's custody of AM in court and that he would have continued visitation rights. (See Agreement of February 24, 2010, attached hereto as **Exhibit G.**)

14.     The Order of Protection against Mr. Cahue was subsequently dissolved. (See Court Order, attached hereto as **Exhibit H.**)

15.     Since birth, AM has lived in the custody and care of Ms. Martinez. Other than the time periods when Ms. Martinez lived together with Mr. Cahue, AM has not lived with Mr. Cahue.

16.     In or about March 2013, Ms. Martinez informed Mr. Cahue of her plans to move to Mexico with AM and enroll in law school. Thereafter, on July 26, 2013, Mr. Cahue executed a notarized letter consenting to AM's travel to Mexico with Ms. Martinez. (See July 26, 2013 Permission Letter, attached hereto as **Exhibit I.**)

17.     After moving to Mexico, Ms. Martinez enrolled AM in the Colegio Nueves Horizontes, a private school located in Jesus Maria. AM attended the school during the 2013/2014 academic year and was registered to attend for the following year. (See 2013/2014 tuition receipt for Colegio Nueves Horizontes for AM receipt, attached hereto as **Exhibit J.**)

18.     From July 2013 through August 2014, Ms. Martinez raised AM exclusively in Mexico with no financial support from Mr. Cahue. Mr. Cahue never visited AM in Mexico.

19.     The habitual residence of AM is now in Mexico.

20. In or about April 2014, Mr. Cahue asked Ms. Martinez if AM could travel to the United States for a visit of one week. Ms. Martinez agreed to the request, on the condition that proof of the purchase of a round-trip ticket be provided. In April 2014, AM traveled to Chicago by plane and returned to Mexico pursuant to the agreement between Ms. Martinez and Mr. Cahue.

21. In or about July 2014, Mr. Cahue requested that AM be allowed to travel to the United States again during his summer break, this time for a period of one month. Again, Ms. Martinez agreed to the request on the condition that Mr. Cahue purchase a round-trip ticket and provide proof to Ms. Martinez. Mr. Cahue purchased plane tickets for AM to travel to Chicago on July 3, 2014 and return to Mexico on August 16, 2014. (See ticket confirmation, attached hereto as **Exhibit K**.)

22. Pursuant to the agreement, AM traveled by plane to Chicago on July 3, 2014.

23. On or about August 15, 2014, Ms. Martinez confirmed by telephone with Mr. Cahue that he would ensure that AM was on the scheduled flight back to Mexico on August 16, 2014.

24. On August 16, 2014, Ms. Martinez waited at the airport, but AM was not on the scheduled flight. Ms. Martinez called Mr. Cahue several times before he answered her call, at which time he told Ms. Martinez that he had forgotten that the return flight was that day. Ms. Martinez requested Mr. Cahue make arrangements to send AM back to Mexico immediately, because AM was scheduled to start school on August 19, 2014.

25. Ms. Martinez requested several times that Mr. Cahue to return AM to Mexico. Mr. Cahue refused each request.

5

26. On August 25, 2014, Ms. Martinez traveled to Chicago, Illinois with the intention of regaining possession of AM and accompanying him back to Mexico. Ms. Martinez went to Mr. Cahue's residence, secured AM and took him to her parents' home in Oak Lawn, Illinois. Mr. Cahue did not object, and in fact, consented to Ms. Martinez's actions. However, unknown to Ms. Martinez, Mr. Cahue called the police and falsely claimed that Ms. Martinez wrongfully abducted AM.

27. On August 27, 2014, Mr. Cahue filed an action for custody in the Circuit Court of Cook County (the "IL Custody Action"), seeking an emergency custody order based on the false accusation that Ms. Martinez planned to flee without permission to Mexico with AM. (See Emergency Petition, attached hereto as **Exhibit L**.)

28. The Court granted the ex parte order, and on August 27, 2014, Oak Lawn police removed AM from Ms. Martinez's care and served her brother with a summons for Ms. Martinez to appear in response to Mr. Cahue's petition for custody.

29. Ms. Martinez remained in Illinois and appeared for a hearing in the IL Custody Action on September 17, 2014. During the hearing, Ms. Martinez notified the Court that she and AM are Mexican residents and learned from the Court about the options available for relief under the Hague Convention. Further, at the hearing, the Court granted temporary custody of AM to Mr. Cahue with visitation rights to Ms. Martinez.

30. On or about September 29, 2014, Ms. Martinez returned to Mexico to begin the process of seeking the return of AM under the Hague Convention.

31. On March 11, 2015, about six months after Ms. Martinez returned to Mexico, Mr. Cahue filed a motion in the IL Custody Matter seeking to hold Ms. Martinez in default. On March 13, 2015, while in Mexico, Ms. Martinez prepared a letter and submitted it to the Court

by facsimile contesting jurisdiction due to her impending Hague Convention petition. (See Letter and Fax confirmation, attached hereto respectively as **Exhibits M and N**.)

32.     On March 17, 2015, the United States Department of State prepared a letter providing the Illinois court with notice of Ms. Martinez's application for return of AM to Mexico and drawing the court's attention to the law under Article 16 of the Hague Convention. (See State Department Letter, attached hereto as **Exhibit O**.)

33.     On March 18, 2015, an order was entered finding Ms. Martinez in default and granting sole physical and legal custody to Mr. Cahue. Ms. Martinez's objections were not mentioned.

34.     Ms. Martinez traveled to Chicago, Illinois to visit AM on several occasions, including August 24 to September 29, 2014; for two weeks in December 2014; June 28 to July 10, 2015; and November 21 to December 2, 2015. Between her visits to the United States, Ms. Martinez maintains regular contact with AM by phone and video phone conference.

35.     On or about February 6, 2015, Ms. Martinez submitted her application pursuant to the Hague Convention to the Mexican Central Authority.

36.     On or about March 13, 2015, the Mexican Central Authority transmitted Ms. Martinez's Request for Return of AM to the United States Department of State.  (See Ms. Martinez's Request for Return, attached hereto as **Exhibit P**.)

37.     On or about August 14, 2015, the United States Department of State referred the case to the Office of Children's Issues.  Subsequently, the United States Department of State provided Ms. Martinez with a list of attorneys.

38.     On or about September 24, 2015, Ms. Martinez contacted the undersigned law firm for assistance and legal representation of Ms. Martinez in this matter commenced.

39.     On or about December 15, 2015, Mr. Cahue applied for and received a newly issued US passport for AM.

## PROVISIONAL REMEDIES ALLOWED BY THE ACT

40.     This Court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to present the further removal or concealment before the final disposition of the petition." 22 U.S.C. §9004.

41.     This Court's authority includes the power to vacate state custody orders contravening the Convention.[2]

42.     Upon receiving notice of wrongful removal or retention of a child under the Hague Convention, Article 16 requires any court of the Contracting State that is considering custody of the child to defer any decision until an appropriate court decides on the request for return under the Convention. The Convention does not allow the state in which the child has been wrongfully retained to decide who should have custody.[3]

43.     Article 17 of the Convention states "[t]he sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention." "The entire purpose of the convention is to deter parents from absconding with their children and crossing international borders in the hopes of obtaining a favorable custody decision in a friendlier jurisdiction."[4]

---

[2] *Mozes v. Mozes*, 239 F.3d. 1067, 1085 (9th Cir. 2001).

[3] *Tann v. Bennet*, 2015 U.S. App. LEXIS 21020 at *3-4 (2nd Cir.).

[4] *Walker v. Walker*, 701 F.3d. 1110, 1116 (7th Cir. 2012)(citation omitted).

44.     Ms. Martinez requests this Court vacate the Illinois custody order. The Illinois court failed to defer making a custody determination upon receiving notice of the wrongful retention of AM by Ms. Martinez and the United States Department of State in violation of Article 16 of the Convention.

45.     Section 5(b) of ICARA provides, *inter alia,* that, in a proceeding under Section 4(b) for the return of children, "No court exercising jurisdiction . . . may order . . . child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 22 U.S.C. §9004.  In this case, the state law referred to in Section 5(b) is that of Illinois.  In Illinois, the Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA") is the source of statutory law governing, *inter alia,* the resolution of both domestic and international child custody disputes. 750 ILCS 36/101, *et seq*.

46.     Illinois law authorizes this Court to order the appearance of any person who is in this state and who has physical custody or control of the child to appear before the Court in person with the child.  750 ILCS 36/210(a).  Further, Illinois law authorizes this Court to enforce an order for the return of child made under the Hague Convention as if it were a child custody determination.  750 ILCS 36/302.

47.     Ms. Martinez requests, for the wellbeing of AM, that her access to and visitation with AM be unimpeded pending further hearing of the Court.

48.     Pursuant to 22 U.S.C. § 9003(c), Mr. Martinez will provide  Mr. Cahue with notice of any hearing in accordance with 750 ILCS 36/108 and 750 ILCS 36/205.

49.     Ms. Martinez is prepared to travel to Illinois to participate in any hearing scheduled by the Court. Upon her arrival in the United States, Ms. Martinez will submit herself

to the Court's jurisdiction and agree to remain in the territorial jurisdiction of this Court for the duration of any such hearing.

50.     Pending further hearing of this Court, Ms. Martinez also requests that this Court issue an immediate order prohibiting the removal of AM from this District by Mr. Cahue or others acting on his behalf, taking into safe-keeping all of AM's and Mr. Cahue's travel documents, ordering Mr. Cahue not to obtain substitute travel documents or allow others acting on his behalf to obtain substitute travel documents, and setting an expedited hearing on the Verified Petition.

## UCCJEA DECLARATION

51.     The details regarding AM that are required to be provided under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") are as follows:

- AM is presently located at 6744 South Tripp Avenue, Chicago, Illinois 60629 without Ms. Martinez's consent.

- While in Mexico and up until Mr. Cahue wrongfully retained AM on August 16, 2014, AM resided at Ms. Martinez's home at Troje San Bartolo 104, Fraccionamiento Trojes de San Cristobal, Jesus Maria, Aguascalientes, Mexico.

- Ms. Martinez does not have any information regarding any custody proceeding concerning AM pending in any other court of this or any other State, other than the information provided in this Verified Petition.

- Ms. Martinez does not know of any person or institution, not a party to these proceedings, who has physical custody of AM or claims to have rights of parental responsibility, legal or physical custody of, visitation or parenting time with AM.

## TEMPORARY AND PERMANENT RELIEF REQUESTED

**WHEREFORE**, Petitioner, Jaded Mahelet Ruvalcaba Martinez, requests the following immediate temporary relief.

10

1.      A preliminary Show Cause Order commanding Mr. Cahue to appear in this Court to show cause why Mr. Cahue has kept AM from Ms. Martinez in violation of the laws of Mexico, the agreements between Ms. Martinez and Mr. Cahue, and the Hague Convention,

2.      An Order requiring Mr. Cahue to surrender Mr. Cahue and AM's passports and travel documents to the United States Marshals Service, and

3.      An Order prohibiting AM's removal from the jurisdiction of this Court, pending final disposition of the instant Petition for Return.

**WHEREFORE**, Petitioner, Jaded Mahelet Ruvalcaba Martinez respectfully requests the following relief:

1.      Declaring and adjudicating that Mr. Cahue's retention of AM in the United States was wrongful under Article 3 of the Convention,

2.      An Order directing the prompt return of AM to his habitual residence of Mexico in accordance with Ms. Martinez's custody rights under the laws of Mexico,

3.      An Order directing Mr. Cahue to pay Ms. Martinez's court costs, legal fees, transportation and other expenses relating to the return of AM, and

4.      Any such further relief as justice may require.


Dated:  December 17, 2015                    Respectfully submitted,

                                             Attorney for Petitioner
                                             Jaded Martinez


Steven McMahon Zeller
Thyannda Mack (seeking admission *pro hac vice*)
Dykema Gossett PLLC
10 S. Wacker Dr., Suite 2300
Chicago, IL  60606
(312) 876-1700

# EXHIBIT A



# CERTIFICATION OF VITAL RECORD

## STATE OF ILLINOIS

DEPARTMENT OF PUBLIC HEALTH - DIVISION OF VITAL RECORDS

| MATCHING DC | | | | |
|---|---|---|---|---|
| REGISTRATION DISTRICT NO. **16.0** | STATE OF ILLINOIS | CHILD'S BIRTH NUMBER | | 2006 022 |
| REGISTERED NUMBER | **CERTIFICATE OF LIVE BIRTH** | 112- | | |

1. CHILD'S NAME FIRST ▮▮▮ MIDDLE ▮▮▮ LAST ▮▮▮    2. DATE OF BIRTH (MONTH, DAY, YEAR) 2006  3. TIME 0

4. SEX Male   5. CHILD'S BLOOD TYPE —   6. CITY, TOWN, TWP., ROAD DIST. NO., OR LOCATION OF BIRTH OAK LAWN   7. COUNTY OF BIRTH COOK

8. PLACE OF BIRTH Hospital   9. FACILITY NAME (IF NOT INSTITUTION, GIVE STREET AND NUMBER) Advocate Christ Medical Center

I CERTIFY THAT THIS CHILD WAS BORN ALIVE AT THE PLACE AND TIME AND ON THE DATE STATED. (SIGNATURE OPTIONAL)

10a. *(signature)*

10b. DATE SIGNED (MONTH, DAY, YEAR) 03-28-2006

10c. ILLINOIS LICENSE NUMBER

11. ATTENDANT'S NAME AND TITLE (IF OTHER THAN CERTIFIER) (TYPE/PRINT) Fouad Al-Qawasmi M. D.

12. CERTIFIER'S NAME AND TITLE (TYPE/PRINT) Sandra Nieves Vital Rec Asst

13. ATTENDANT'S MAILING ADDRESS (STREET AND NUMBER OR RURAL ROUTE NUMBER, TOWN, STATE, ZIP CODE) 7380 W. 87th Street Bridgeview Il 60455

14. LOCAL REGISTRAR'S SIGNATURE ▶ *David Orr*  KDO

15. DATE FILED BY LOCAL REGISTRAR (MONTH, DAY, YEAR) APR 04 2006

16. MOTHER'S MAIDEN NAME (FIRST, MIDDLE, LAST) Jaded Mahelet Martinez   17. DATE OF BIRTH (MONTH, DAY, YEAR) ▮▮▮ 1987   18. BIRTHPLACE (STATE OR FOREIGN) MEXICO

19a. RESIDENCE-STREET AND NUMBER 3032 W 100th St   19b. CITY, TOWN, TWP., OR ROAD DIST. NO. EVERGREEN PARK   19c. INSIDE CITY Y

19d. COUNTY COOK   19e. STATE IL   19f. MOTHER'S MAILING ADDRESS (IF SAME AS RESIDENCE, ENTER ZIP CODE ONLY) 60805

20. FATHER'S NAME (FIRST, MIDDLE, LAST) Peter Cahue   21. DATE OF BIRTH (MONTH, DAY, YEAR) ▮▮▮ 1985   22. BIRTHPLACE (STATE OR FOREIGN) ILLINOIS

I CERTIFY THAT THE PERSONAL INFORMATION PROVIDED ON THIS CERTIFICATE IS CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

23. INFORMANT'S SIGNATURE (OPTIONAL) ▶ *(signature)*

952541

This is to certify that this is a true and correct copy of the official record filed with the Illinois Department of Public Health.

DATE ISSUED

DEC 17 2010

*Damon T. Arnold, M.D., M.P.H.*

DAMON T. ARNOLD, M.D., M.P.H.
STATE REGISTRAR

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# EXHIBIT B

## INCIDENT/INVESTIGATION REPORT

| | |
|---|---|
| Agency Name | Case# 09-028995 |
| Oak Lawn Pd Conversion Data | |
| ORI IL 0168000 | Date / Time Reported 09/17/2009 10:16 Thu |
| | Last Known Secure 09/16/2009 22:00 Wed |

**INCIDENT DATA**

| Location of Incident 9516 S Keeler Ave Apt. 1S, Oak Lawn IL 60453- | Premise Type Residence/home | Zone/Tract 2 | At Found 09/16/2009 22:30 Wed |
|---|---|---|---|

| #1 | Crime Incident(s) Unidentified Charge 9999 | (Com) | Weapon / Tools KNIFE/LETHAL CUTTING INSTRUMEN | | Activity |
|---|---|---|---|---|---|
| | | | Entry | Exit | Security |
| #2 | Crime Incident | ( ) | Weapon / Tools | | Activity |
| | | | Entry | Exit | Security |
| #3 | Crime Incident | ( ) | Weapon / Tools | | Activity |
| | | | Entry | Exit | Security |

**MO**

**VICTIM**

# of Victims 0   Type:   Injury:

| V1 | Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|

| Home Address | | Home Phone |
|---|---|---|

| Employer Name/Address | Business Phone | Mobile Phone |
|---|---|---|

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|

**OTHERS INVOLVED**

CODES: V- Victim (Denote V2, V3)   O = Owner (if other than victim)   R = Reporting Person (if other than victim)

Type: INDIVIDUAL   Injury:

| Code RP | Name (Last, First, Middle) | Victim of Crime # | DOB Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|

| Home Addr. | | Home Phone |
|---|---|---|

| Employer Name/Address | Business Phone | Mobile Phone |
|---|---|---|

Type: INDIVIDUAL   Injury:

| Code IO | Name (Last, First, Middle) MARTINEZ, JADED M | Victim of Crime # | DOB Age 22 | Race H | Sex F | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|

| Home Address | | Home Phone |
|---|---|---|

| Employer Name/Address (GIRLFRIEND) | Business Phone | Mobile Phone |
|---|---|---|

**PROPERTY**

1 = None  2 = Burned  3 = Counterfeit / Forged  4 = Damaged / Vandalized  5 = Recovered  6 = Seized  7 = Stolen  8 = Unknown
"OJ" = Recovered for Other Jurisdiction

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Officer/ID# REGAN, J. (2162) | | |
|---|---|---|
| Invest ID# (0) | | Supervisor BARRON, P. (2027) |

**Status**

| Complainant Signature | Case Status See Public Narrative 09/18/2009 | Case Disposition: | Page 1 |
|---|---|---|---|

Printed By: NBORN, OLPDRD03    Sys#: 87041    11/23/2015 15:53:17

## Incident Report Additional Name List

*Oak Lawn Pd Conversion Data*

OCA: *09-028995*

Additional Name List | Page 2

| | NameCode/# | | Name (Last, First, Middle) | Victim of Crime # | DOB | Age | Race | Sex |
|---|---|---|---|---|---|---|---|---|
| 1) | IO | 2 | *CAHUE, PETER* | | | 24 | H | M |
| | Address | | | | H: | | | |
| | Empl/Addr | | | | B: | | | |
| | | | | | Mobile #: | | | |

# INCIDENT/INVESTIGATION REPORT

By: NBORN, OLPDRD03   11/23/2015 15:53

Page 3

*Oak Lawn Pd Conversion Data*

Case# 09-028995

| Status Codes | 1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged / Vandalized   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown |
|---|---|

| | IBR | Status | Quantity | Type Measure | Suspected Type | Up to 3 types of activity |
|---|---|---|---|---|---|---|
| **D R U G S** | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Assisting Officers

Suspect Hate / Bias Motivated:

Page 3

**NARRATIVE**

# REPORTING OFFICER NARRATIVE

| *Oak Lawn Pd Conversion Data* | | OCA 09-028995 |
|---|---|---|
| Victim | Offense *AGGRAVATED ASSAULT* 0510 | Date / Time Reported *Thu 09/17/2009 10:16* |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

CAD: DISPATCH INFORMATION:
Reporting Officer: (2162) - REGAN, JAMES:
Added By Employee: 0:
  Disturbance Domestic STATION RPT /

ORIGINAL:
Reporting Officer: (2162) - REGAN, JAMES:
Added By Employee: (2162) - REGAN, JAMES:
  R/O MET WITH THE LISTED VICTIM WHO RELATED THE FOLLOWING: VICTIM AND OFFENDER
HAVE BEEN IN A RELATIONSHIP FOR EIGHT YEARS AND HAVE ONE CHILD TOGETHER. ON 091609
AT APPROXIMATELY 2200 HOURS VICTIM AND OFFENDER ARGUED OVER A PICTURE OF
ANOTHER MAN ON THE VICTIMS CELL PHONE. OFFENDER BECAME VERY ANGRY AND GRABBED
THE CELL PHONE FROM VICTIMS HAND. OFFENDER THEN PUSHED THE VICTIM TO THE GROUND
SEVERAL TIMES. OFFENDER THEN GRABBED THE VICTIM BY HER SHIRT AND PULLED HER UP,
RIPPING THE SHIRT. OFFENDER HELD VICTIM BY THE SHIRT WITH ONE HAND AND HAD THE
OTHER HAND CLENCHED IN A FIST THREATENING TO PUNCH VICTIM. THE SITUATION THEN
CALMED AND THE OFFENDER LEFT FOR ABOUT 1 HOUR. HE RETURNED AND BEGAN ARGUING
WITH THE VICTIM AGAIN. OFFENDER PULLED OUT A FOLDING KNIFE AND SWUNG IT BY VICTIMS
FACE. SHE RELATED THAT IF SHE HAD NOT JUMPED BACK HER FACE WOULD HAVE BEEN CUT.
OFFENDER THEN MOVED CLOSE TO VICTIM AND PRESSED THE KNIFE INTO HER ABDOMINAL
AREA. VICTIM SCREAMED FOR HER MOTHER, WHO LIVES IN THE APARTMENT ABOVE. 
OFFENDER STATED, "SCREAM AGAIN AND SEE WHAT HAPPENS TO YOU." VICTIM DID NOT
SCREAM BUT ASKED THE OFFENDER TO PUT THE KNIFE DOWN SEVERAL TIMES. OFFENDER THEN
THREW THE KNIFE DOWN AND WENT INTO ANOTHER ROOM. VICTIM WAS UNABLE TO CALL THE
POLICE BECAUSE THE OFFENDER HAD HER PHONE. VICTIM RECOVERED THE KNIFE FROM THE
SCENE AND TURNED IT OVER TO OLPD. KNIFE INVENTORIED AND PHOTOGRAPHED. PHOTO OF
VICTIMS TORN SHIRT INVENTORIED. COMPLAINTS SIGNED BY VICTIM FOR AGGRAVATED
ASSAULT-DOMESTIC RELATED. DOMESTIC VIOLENCE ORDER OF PROTECTION PACKET
COMPLETED. VICTIM ADVISED ON PROCEDURE FOR OBTAINING ORDER OF PROTECTION.
UNABLE TO LOCATE OFFENDER WHO IS WORKING UNKNOWN CONSTRUCTION LOCATION IN
CHICAGO.

**INCIDENT/INVESTIGATION REPORT**

| | |
|---|---|
| Agency Name | Case# 09-030758 |
| *Oak Lawn Pd Conversion Data* | |
| ORI IL 0168000 | Date / Time Reported *10/02/2009* 16:33 Fri |
| | Last Known Secure *10/02/2009* 16:00 Fri |

**INCIDENT DATA**

Location of Incident: *9516 S Keeler Ave Apt. 1S, Oak Lawn IL 60453-*

Premise Type: *Residence/home*  Zone/Tract: 2

At Found *10/02/2009* 16:33 Fri

| #1 | Crime Incident(s) (Com) *Unidentified Charge* *9999* | Weapon / Tools *UNKNOWN* | | | Activity |
|---|---|---|---|---|---|
| | | Entry | Exit | Security | |
| #2 | Crime Incident ( ) | Weapon / Tools | | | Activity |
| | | Entry | Exit | Security | |
| #3 | Crime Incident ( ) | Weapon / Tools | | | Activity |
| | | Entry | Exit | Security | |

**MO**

**VICTIM**

# of Victims 0  Type:  Injury:

| V1 | Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|

Home Address | Home Phone

Employer Name/Address | Business Phone | Mobile Phone

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|

CODES: V- Victim (Denote V2, V3)  O = Owner (if other than victim)  R = Reporting Person (if other than victim)

**OTHERS INVOLVED**

Type: INDIVIDUAL  Injury:

| Code RP | Name (Last, First, Middle) *PETER CAHUE* | Victim of Crime # | DOB Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|

Home Address *9516 Keeler Av ...*  Home Phone

Employer Name/Address | Business Phone | Mobile Phone

Type: INDIVIDUAL  Injury:

| Code IO | Name (Last, First, Middle) *UNKNOWN, UNKNOWN* | Victim of Crime # | DOB Age | Race B | Sex M | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|

Home Address | Home Phone

Employer Name/Address | Business Phone | Mobile Phone

**PROPERTY**

1 = None  2 = Burned  3 = Counterfeit / Forged  4 = Damaged / Vandalized  5 = Recovered  6 = Seized  7 = Stolen  8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| 1 | 07 | 7 | $1,000.00 | | 0 | *VIDEO CAMERA* | *SONY* | |
| 1 | 07 | 7 | $450.00 | | 0 | *ELECTRONIC EQUIPMENT* | *SONY/Playstation3* | |

Officer/ID# *HEILIG, S. (2212)*

Invest ID# *(0)*  Supervisor *GARRETT, J. (2126)*

**Status** | Complainant Signature | Case Status *See Public Narrative* *10/02/2009* | Case Disposition: | Page 1

Printed By: NBORN, OLPDRD03 | Sys#: 88389 | 11/23/2015 15:51:12

# Incident Report Additional Name List

*Oak Lawn Pd Conversion Data*

OCA: *09-030758*

Additional Name List

Page 2

| | NameCode/# | Name (Last, First, Middle) | Victim of Crime # | DOB | Age | Race | Sex |
|---|---|---|---|---|---|---|---|
| 1) | WI   1 | *MARTINEZ, MIGUEL A* | | | ꞉2 | H | M |
| | Address | | | H: | | | |
| | Empl/Addr | | | B: | | | |
| | | | | Mobile #: | | | |
| 2) | WI   2 | *MARTINEZ, MIGUEL* | | | 52 | H | M |
| | Address | | | H: | | | |
| | Empl/Addr | | | B: | | | |
| | | | | Mobile #: | | | |
| 3) | IO   2 | *CAHUE, PETER* | | | 24 | H | M |
| | Address | | | H: | | | |
| | Empl/Addr | | | B: | | | |
| | | | | Mobile #: | | | |
| 4) | IO   3 | *MARTINEZ, MIGUEL A* | | | 20 | H | M |
| | Address | | | H: | | | |
| | Empl/Addr | | | B: | | | |
| | | | | Mobile #: | | | |
| 5) | IO   4 | *CAHUE, PETER* | | | 24 | H | M |
| | Address | | | H: | | | |
| | Empl/Addr | | | B: | | | |
| | | | | Mobile #: | | | |
| 6) | IO   5 | *MARTINEZ, MIGUEL A* | | | 20 | H | M |
| | Address | | | H: | | | |
| | Empl/Addr | | | B: | | | |
| | | | | Mobile #: | | | |

# INCIDENT/INVESTIGATION REPORT

By: NBORN, OLPDRD03   11/23/2015 15:51

Page 3

*Oak Lawn Pd Conversion Data*

Case# **09-030758**

**Status Codes**  1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged / Vandalized   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown

| | IBR | Status | Quantity | Type Measure | Suspected Type | Up to 3 types of activity |
|---|---|---|---|---|---|---|
| **D** | | | | | | |
| **R** | | | | | | |
| **U** | | | | | | |
| **G** | | | | | | |
| **S** | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Assisting Officers

Suspect Hate / Bias Motivated:

Page 3

**NARRATIVE**

# EXHIBIT C

506
(Court Branch #        (Court Date / Time)        Il0168000 ·        Room #_____        Ke
or District #)                                    (Arresting Agency #)

**MISDEMEANOR COMPLAINT**  (This form replaces CCG-0655 & CCMC-0225)        (5/22/97)  CC

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

The People of State of Illinois,

                                    Plaintiff                    }        No.  O9800

v.

PETER CAHUE

                                    Defendant.

JADED M. MARTINEZ                                        Complainant, now appe
(Complainant's Name Printed or Typed)

The Circuit Court of Cook County and states the following:
That:_____PETER CAHUE_____ of ___9516 S. KEELER #1S OAK LAWN,IL___ has, o
                (defendant)                         (address)
16 SEPT 09_____ at the location of  9516 S. KEELER #1S
        (date)                                                          Oak Lawn, Cook County
Committed the offense(s) of _____ AGGRAVATED ASSAULT
in that he/she
. IN COMMITTING AN ASSAULT, IN VIOLATION OF SEC. 12-1(1)OF ACT 5 OF CHAPTER 720 OF THE
ILLINOIS COMPILED STATUTES, USED A DEADLY WEAPON, IN THAT HE KNOWINGLY WAVED A
AT THE FACE AND PRESSED IT INTO THE ABDOMINAL AREA OF JADED M. MARTINEZ, THEREBY
PLACING JADED M. MARTINEZ IN REASONABLE APPREHENSION OF RECEIVING A BATTERY.

In violation of ___CHAPTER 720___ Illinois Compiled Statutes
        AOIC Code  (Chapter)                            5          /        SEC 12-2
                                                      (Act)                 (Sub Secti

                                        x  Jaded Marty
                                           (Complainant's Signature)
                                        9516 S. KEELER #1S OAK LAWN,IL 60453
                                           (Complainant's Address)
                                        (773)680-8680
                                           (Complainant's Telephone)
                                        JADED M. MARTINEZ
                                           (Complainant's Name Printed or Typed)

The complainant, being first duly sworn on oath, deposes and says that he/she read the foregoing complaint by hir
subscribed and that the same is true.

                                        x  Jaded Marty
                                           (Complainant's Signature)
Subscribed and sworn to before me on this ___17TH___ day of ___SEPT___ , 20

                                        _____
                                           (Judge or Clerk)
I have examined the above complaint and the person presenting the same and have heard evidence thereon, and an
satisfied that there is probable cause for filing same.  Leave is given to file said complaint.
**SUMMONS ISSUED,** Judge _____
        or
**WARRANT ISSUED,** Bail set at: _____        _____
        Or                                              Judge's No.
**BAIL SET AT:** _____ Judge _____

COPY

# EXHIBIT D

EMERGENCY ORDER OF PROTECTION: 1 of 3 Pages

CCG N801A-40M-7

(This form r...

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

People ex rel. _St. of Il..._

_____ on behalf of

_____ self and/or behalf of

_Jaded Martinez_

**Petitioner**
vs.

_Peter Colvin_

**Respondent**

Case No. _____

☐ **Independent Proceeding**
☐ **Other Civil Proceeding**
   (Specify)
☒ **Criminal Proceeding**
☐ **Juvenile Proceeding**

LEADS NO. _____

| PETITIONER | ADDRESS | CITY/STATE/ZIP |
|---|---|---|
| Jaded ... | 3033 W 100th ☐ (Check if omitted pursuant to Statute) | Evergreen P... |
| **RESPONDENT** | **ADDRESS** | **CITY/STATE/ZIP** |
| Peter ... | 7063 ... Cir ... #1... | Oak Lawn... |

| Birthdate (Required for LEADS) | Sex | Race | Height | Weight | Hair | Eyes | Social Security Number *(if known)* |
|---|---|---|---|---|---|---|---|
| 4-30-... | m | hisp | 5 4 | 160 | blk | bro | ___-__-__ |

### EMERGENCY ORDER OF PROTECTION

CRIM CODE ☐ 952   CIVIL CODE ☐ 4553

ANY KNOWING VIOLATION OF ANY ORDER OF PROTECTION FORBIDDING PHYSICAL ABUSE, NEGLECT, EXPLOITATION, HARASSMENT, INTERFERENCE WITH PERSONAL LIBERTY, WILLFUL DEPRIVATION, OR ENTERING OR REMAINING PRESENT AT SPECIFIED PLACES WHEN T... PERSON IS PRESENT OR GRANTING EXCLUSIVE POSSESSION OF THE RESIDENCE OR HOUSEHOLD, PROHIBITING ENTERING OR ... THE HOUSEHOLD WHILE UNDER THE INFLUENCE OF ALCOHOL OR DRUGS AND SO CONSTITUTING A THREAT TO THE SAFETY AND WEL... PROTECTED PERSON, OR GRANTING A STAY AWAY ORDER, IS A CRIMINAL OFFENSE. GRANT OF EXCLUSIVE POSSESSION OF THE ... HOUSEHOLD SHALL CONSTITUTE NOTICE FORBIDDING TRESPASS TO LAND. ANY KNOWING VIOLATION OF ANY ORDER AWARDING LEG... PHYSICAL CARE OF A CHILD, OR PROHIBITING REMOVAL OR CONCEALMENT OF A CHILD MAY BE A CLASS 4 FELONY. ANY WILLFUL VIO... ORDER IS CONTEMPT OF COURT. ANY VIOLATION MAY RESULT IN A FINE OR IMPRISONMENT. STALKING IS A FELONY.

Any order of protection which would expire on a court holiday shall instead expire at the close of the next court bu...
750 ILCS 60/220 (F)

The following persons are protected by this Order: _Jaded Martinez_
_____ _minor child_

"The minor child/ren" referred to herein are: _Alessandra Colvin (3)_

Date, time and place for further hearing:

Date: _10 8 09_ Time: _9:00am_ Courtroom/Calendar No.: _R102_

Location: _Bridgeview_

This order was issued on:

Date: _7 18 09_ Time: _10:__am_

☐ This Order will be in effect until:

☐ Date: _10 8 09_ Time: _1..._

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

5. PETITIONER

EMERGENCY ORDER OF PROTECTION: 2 of 3 Pages

CCG-N801B-30M-1

(This form

BASED ON THE FINDINGS OF THIS COURT, ☐ WHICH WERE MADE ORALLY FOR TRANSCRIPTION, ☐ WHICH ARE SET OUT IN A SEPARATE INSTRUMENT FILED WITH THE COURT, AND WITH THE CO HAVING JURISDICTION OF THE SUBJECT MATTER AND OVER ALL NECESSARY PARTIES, IT HEREBY ORDERED THAT:

☐ 1. With respect to all Protected Persons, Respondent is prohibited from committing the following:
    ☐ Physical abuse; ☐ Harassment; ☐ Interference with personal liberty; ☐ Intimidation of a dependent; ☐ Willful deprivation; ☐ Neglect; ☐ Exploitation; ☐ Stalking.

☐ 2. Petitioner is granted exclusive possession of the residence and Respondent shall not enter or remain in the household or premises
    *[This remedy does not affect title to property ]*

☐ 3. ☐ a. Respondent is ordered to stay away from Petitioner and other protected persons; and/or
    ☐ b. Respondent is prohibited from entering or remaining at _____
    _____ while any Protected Person is prese

    ☐ c. Respondent is allowed access to the residence on (date)_____ at (time)_____ in the p
    (name)_____ to remove items of clothing, personal adornments, medications used e
    by the Respondent and other items, as follows:_____

☐ 5. ☐ a. Petitioner is granted physical care and possession of the minor child/ren; and/or
    ☐ b. Respondent is ordered to:
      ☐ Return the minor child/ren _____ to the physic
                           ; and/or
      ☐ Not remove the minor child/ren ██████████████████
      the physical care of Petitioner or _____

☐ 7. ☐ a. Respondent is awarded visitation rights on the following dates and times or under the following conditions or parameters:
    *[No order shall merely refer to the term " reasonable visitation"]*
    _____
    _____

    ☐ b. Respondent's visitation is restricted as follows:
    _____

    ☐ c. Respondent's visitation is reserved/ denied.
    (Petitioner may deny Respondent access to the minor child/ren if, when Respondent arrives for visitation, Respondent is under the
    of drugs or alcohol and constitutes a threat to the safety and well-being of Petitioner or Petitioner's minor child/ren or is behaving i
    or abusive manner.)

☐ 8. Respondent is prohibited from removing the minor child/ren from Illinois or concealing them within Illinois.

☐ 9. Respondent is ordered to appear in Courtroom/Calendar_____ at _____
    _____ on _____ at _____ AM/PM, with/without the mino

☐ 10. Petitioner is granted exclusive possession of the following personal property and the Respondent is ordered to promptly make av
    Petitioner said property that is in Respondent's possession or control, to wit:
    _____
    *[This remedy does not affect title to property ]*

☐ 11. Respondent is prohibited from taking, encumbering, concealing, damaging or otherwise disposing of the following personal property:
    _____
    _____ , except as explicitly authorized by
    ☐ Further, Respondent is prohibited from improperly using the financial or other resources of an aged member of the family or i
    for the profit or advantage of Respondent or any other person.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINO**

5. PETITIONER

CASE NO. _____

EMERGENCY ORDER OF PROTECTION     3 of 3 Pages                                    (This form # re

☐  14.  Respondent is prohibited from entering or remaining at the household or residence located at _____
         _____ whi
         the influence of alcohol or drugs and so constituting a threat to the safety and well-being of any Protected Person.

☐  15.  Respondent is denied access to school and/or any other records of the minor child/ren and is prohibited from inspecting, obtain
         attempting to inspect or obtain such records.

☒  17.  Respondent is further ordered and/or enjoined as follows: _____
         _NO Contact_ of Protected parties + D, _____
         _____

☐  18.  The relief requested in paragraph(s) _____ of the petition is (DENIED) (RESERVED),
         _____
         _____

         NOTICE: Upon 2 days notice to Petitioner, or such shorter notice as the Court may prescribe, a Respondent subject to an Ex
         Order of Protection issued under the IDVA may appear and petition the Court to re-hear the original or amended Petition, Res
         petition shall be verified and shall allege lack of notice and a meritorious defense .

                                                                   Date: _____
                                                                   Judge: _____
                                                                                    Judge's

                    ENTERED
                    SEP 18 2009
                    DOROTHY BROWN
                    CLERK OF CIRCUIT COURT

                                          I HEREBY CERTIFY THE ABOVE TO BE
                                          DATE_____
                                               CLERK OF THE CIRCUIT COURT
                                                   OF COOK COUNTY, IL
                                          This order is the command
                                          of the Circuit Court and
                                          violation thereof is subject
                                          to the penalty of the law.

Attorney (or Pro Se Petitioner) Name: _____
Address _____
City/Zip _____
Phone _____
Attorney # _____

# EXHIBIT E

Interim/Plenary Order of Protection: 1 of 3 Pages

(This form replace[s]

05 A

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

People ex rel. _St. OF Ill._

_____ on behalf of

_____ self and/or behalf of

_Jaded Martinez_

**Petitioner**

v.

_Peter Cahue_

**Respondent**

Case No. _07MC300_

☐ Independent Proceeding
☐ Other Civil Proceeding
   (Specify) _____
☐ Criminal Proceeding
☐ Juvenile Proceeding

LEADS NO. _____

| PETITIONER | ADDRESS | CITY/STATE/ZIP |
|---|---|---|
| Jaded Martinez | 3032 W. 100th St. ☐ (Check if omitted pursuant to Statute) | Evergreen |
| RESPONDENT | ADDRESS | CITY/STATE/ZIP |
| Peter Cahue | 9514 S. Keeler Ave #15 | Oak Lawn |

| Birthdate 4/30/85 (Required for LEADS) | Sex M | Race Hisp. | Height 5'4 | Weight 180 | Hair Blk | Eyes |
|---|---|---|---|---|---|---|

## ORDER OF PROTECTION

### INTERIM
Crim ☐ 953   Civil ☐ 4552

### PLENARY
Crim ☐ 954   Civil ☐ 4652

ANY KNOWING VIOLATION OF ANY ORDER OF PROTECTION FORBIDDING PHYSICAL ABUSE, NEGLECT, EXPLOITATION, HARASSMEN[T,] INTERFERENCE WITH PERSONAL LIBERTY, WILLFUL DEPRIVATION, OR ENTERING OR REMAINING PRESENT AT SPECIFIED PLACES WHEN PERSON IS PRESENT OR GRANTING EXCLUSIVE POSSESSION OF THE RESIDENCE OR HOUSEHOLD, PROHIBITING ENTERING OR RE[ ] HOUSEHOLD WHILE UNDER THE INFLUENCE OF ALCOHOL OR DRUGS AND SO CONSTITUTING A THREAT TO THE SAFETY AND WELL BEING OF PERSON, OR GRANTING A STAY AWAY ORDER, IS A CRIMINAL OFFENSE. GRANT OF EXCLUSIVE POSSESSION OF THE RESIDENCE OR HOUSEHOL[D] TUTE NOTICE FORBIDDING TRESPASS TO LAND. ANY KNOWING VIOLATION OF ANY ORDER AWARDING LEGAL CUSTODY OR PHYSICAL CAR[E] PROHIBITING REMOVAL OR CONCEALMENT OF A CHILD MAY BE A CLASS 4 FELONY. ANY WILLFUL VIOLATION OF ANY ORDER IS CONTEMP[T] VIOLATION MAY RESULT IN A FINE OR IMPRISONMENT. STALKING IS A FELONY.

Any order of protection which would expire on a court holiday shall instead expire at the close of the next court business day. 750

*(Definitions of prohibited conduct on reverse)*

The following persons are protected by this Order: _Jaded Martinez +_

_minor child_

"The minor child/ren" referred to herein are:

███████████████████████████ (_)

Date, time and place for further hearing:

Date: _____ Time: _____ Courtroom/Calendar No.: _____

Location: _____

| This Order was issued on: | This Order will be in effect until: |
|---|---|
| Date: 10-8-07   Time: 9:15 AM | ☐ Date: _____ Time: _____ ☐ Vacated by court order: _____ ☐ Specified event: _Duration of Pro_ |

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

CCG-N805 B-35M-9/15/05 (5

Interim/Plenary Order of Protection: 2 of 3 Pages                    (This form I                    2)

BASED ON THE FINDINGS OF THIS COURT, ☐ WHICH WERE MADE ORALLY FOR TRANSCRIPTION, OR ☐ WHICH ARE
A SEPARATE INSTRUMENT FILED WITH THE COURT, AND WITH THE COURT HAVING JURISDICTION OF THE SUJECT
OVER ALL NECESSARY PARTIES, IT IS HEREBY ORDERED THAT:

☐ 1. With respect all Protected Persons, Respondent is prohibited from committing the following:
    ☐ Physical abuse;    ☐ Harassment;    ☐ Interference with personal liberty;    ☐ Intimidation of a dependent;
    ☐ Willful deprivation;    ☐ Neglect;    ☐ Exploitation;    ☐ Stalking.

☐ 2. Petitioner is granted exclusive possession of the residence and Respondent shall not enter or remain in the household or pre
_____
    *[This remedy does not affect title to property]*

☐ 3. ☐ a. Respondent is ordered to stay away from Petitioner and other protected person; and/or
    ☐ b. Respondent is prohibited from entering or remaining at _____
    _____ while any Protected Person is
    ☐ c. Respondent is allowed access to the residence on (date) _____ at (time) _____ in
    (name) _____ to remove items of clothing, personal adornments, medications
    by the Respondent and other items, as follows:

☐ 4. Respondent is ordered to undergo counseling at _____
for a duration of _____

☐ 5. ☐ a. Petitioner is granted physical care and possession of the minor child/ren; and/or
    ☐ b. Respondent is ordered to:
      ☐ Return the minor child/ren _____ to the ph
      _____; and/or
      ☐ Not remove the minor child/ren _____
      the physical care of Petitioner or _____

☐ 6. Petitioner is granted temporary legal custody of the minor child/ren; _____

☐ 7. ☐ a. Respondent is awarded visitation rights on the following dates and times or under the following conditions or parameter
    *[No order shall merely refer to the term "reasonable visitation"]*

    ☐ b. Respondent's visitation is restricted as follows:

    ☐ c. Respondent's visitation is denied.
    (Petitioner may deny Respondent access to the minor child/ren if, when Respondent arrives for visitation, Respond
    influence of drugs or alcohol and constitutes a threat to the safety and well-being of Petitioner or Petitioner's minor child/r
    in a violent or abusive manner.)

☐ 8. Respondent is prohibited from removing the minor child/ren from Illinois or concealing them within Illinois.

☐ 9. Respondent is ordered to appear in Courtroom/Calendar _____ at _____
    _____ on _____ at _____ a.m./p.m, with/without the

☐ 10. Petitioner is granted exclusive possession of the following personal property and the Respondent is ordered to promptly make av
    to Petitioner said property that is in Respondent's possession or control, to wit:
    _____
    _____
    *[This remedy does not affect title to property]*

☐ 11. Respondent is prohibited from taking, encumbering, concealing, damaging or otherwise disposing of the following personal prop
    _____, except as explicitly authorize
    ☐ Further, Respondent is prohibited from improperly using the financial or other resources of an aged member of the family or ho
    point or advantage of Respondent or any other person.

☐ 12. Respondent is ordered to pay temporary support for ☐ Petitioner and/or ☐ the minor child/ren of the parties as follows:
    $ _____ per _____, starting _____, payable ☐ through the Clerk of th
    or ☐ directly to Petitioner.

☐ 13. Respondent is ordered to pay $ _____ as actual monetary compensation for loss(es) to _____
    on or before _____.
    ☐ Further, Respondent is ordered to pay court costs in the amount of $ _____ and attorney fees in the amount of
    to _____ in connection with any action to obtain, modify, enforce, appeal or re
    of Protection, on or before _____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Interim/Plenary Order of Protection:    3 of 3 Pages

CCG N805 C-35M-5/18/05

(This form replaces CCG-83-1)

☐ 14.    Respondent is prohibited from entering or remaining at the household or residence located at _____

_____
the influence of alcohol or drugs and so constituting a threat to the safety and well-being of any Protected Person.

☐ 14.5   1.   The Court has examined the Petitioner and any other witnesses under oath, has examined the petition and other relevant evide
            of whether Respondent has threatened or is likely to use a firearm(s) illegally against Petitioner, and finds that there is a dan
            use of firearms.

            The Court finds that the Respondent:
            ☐  has appeared personally in court
            ☐  failed to appear personally after having received actual notice.

         2.   Respondent is ordered to turn over any and all firearms, including the following: _____

_____

         3.   Respondent shall turn over the above-listed firearms(s) to the police agency _____

            on or before _____, _____ for safekeeping, to be returned to the Respondent on _____
            (Period not to exceed two years unless otherwise prohibited under federal law. 18 U.S.C. §§ 922(d) and (g)(8), and 922(d) an

☐ 15.    Respondent is denied access to school and/or any other records of the minor child/ren and is prohibited from inspecting, obtainin
         to inspect or obtain such records.

☐ 16.    Respondent is ordered to pay $_____ to the following shelter _____

_____.

☐ 17.    Respondent is further enjoined and/or enjoined as follows: _____

_____

_____

☐ 18.    The relief requested in paragraph(s) _____ of the petition is (DENIED) (RESERVED), because: _____

_____

"This Order of Protection is enforceable, even without registration, in all 50 states, the District of Columbia, tribal lands, and th
ries pursuant to the Violence Against Women Act (18 U.S.C. 2265).  Violating this Order of Protection may subject the Responde
charges and punishment (18 U.S.C. 2261-2262).  The Respondent may be subject to federal criminal penalties for possessing, tran
shipping, or receiving any firearm or ammunition under the Gun Control Act (18 U.S.C. 922 (g) (8) and (9))."

PEENARY ORDERS ONLY

This Order shall remain in effect until:                          I HEREBY CERTIFY THE ABOVE TO BE CO

☐  1.   two years following the date of entry of such Order, such expiration date being _____

        such earlier date, as ordered by the Court, such expiration date being _____

☐  2.   final judgment in conjoined proceeding is rendered.
☐  3.   this Order is modified or vacated (provided such Order is incorporated into the final judgment of another civil proceeding).
☐  4.   termination of any voluntary or involuntary commitment, or until _____
                                                                  (not to exceed 2 years)
☐  5.   final disposition when a Bond Forfeiture Warrant has issued, or until _____
                                                                  (not to exceed 2 years)
☐  6.   expiration of any supervision, conditional discharge, probation, periodic imprisonment, parole, or supervised mandatory relea
☐  7.   expiration of a term of imprisonment set by this Court, plus 2 years.

        Any order of protection which would expire on a court holiday shall instead expire at the close of the next court business day.  750

NOTICE:  Upon 2 days notice to Petitioner, or such shorter notice as the Court may prescribe, a Respondent subject to an Interim Order of Pr
under the IDVA may appear and petition the Court to re-hear the original or amended petition.  Respondent's petition shall be verified and sh
notice and a meritorious defense.

Atty. No. _____                              Date: _____

Attorney (or Pro Se Petitioner) Name: _____

Address: _____                              _____
                                                      Judge
State/City/Zip: _____

Telephone: _____                            Case No. _____

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

5   PETITIONER'S COPY

# EXHIBIT G

Exhibit x

I, Peter Cohie agree that I
will NOT fight costody in court
for my son ████████ I,
Peter Cohie have come to an agreement
with foster Misty (mother of my son)
to have consistent access to him and
that he will be able to sleep over
2 days a week.

[signatures and dates]

02-24-09
02-24-10

Exhibit B-3

# EXHIBIT H

Disposition Order   (This form replaces CCG-0081 and CCG-0682)                     (10/0        804

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Jaded Martinez

**Petitioner**

Any order of protection which would
holiday shall instead expire at the clos
business day. 750 ILCS 60/220 (f)

v.

CASE NO. 09MC50

Peter Cahue

LEADS NO. _____

**Respondent**

RESPONDENT'S D.O.B. 4-3

RESPONDENT SERVED IN OPEN COURT **DISPOSITION ORDER**
                              Orders of Protection

☐ Independent Petition
☐ Domestic Relations
☐ Criminal Proceeding

**THE COURT FINDS THAT:**
(Strike if inapplicable)

☐ An Emergency Order of Protection was issued on _____ , _____

☒ An (Interim/Plenary) Order of Protection was issued on   10-8   , 2009

☐ An (Emergency/Interim/Plenary) Order of Protection was previously extended on

**THE COURT HAVING JURISDICTION OF THE SUBJECT MATTER IT IS HEREBY ORDERED THAT:**

1. ☐ The Emergency Order of Protection is extended to: _____ , _____ at ____ .m.
   OR
   ☐ The (Interim/Plenary) Order of Protection previously issued is hereby extended to:

   _____ , _____ at _____ .m.
                Date

2. ☐ A hearing on the Emergency Order of Protection is set for _____ at ____ .m.
                                                            Date
   OR ☐ A hearing on the (Interim/Plenary) Order of Protection is set for _____ , ____ .m.
                                                                     Date

   in the Court located at _____
                                    Address

3. ☐ The Emergency Order of Protection is vacated.
   OR ☐ The (Interim/Plenary) Order of Protection is vacated.

4. ☐ The Emergency Order of Protection is terminated.
   Or ☒ The (Interim/Plenary) Order of Protection is terminated.

5. ☐ The Emergency Order of Protection is modified as follows:
   OR ☐ The (Interim/Plenary) Order of Protection is modified as follows:

   _____

   _____

ENTER
FEB 2 1 2

DOROTHY B
CLERK OF CIRC

6. ☐ Alias Summons to issue
   ☐ Service by publication

7. ☐ Case Number _____ is dismissed.

Atty. No.: _____

Name: ASA

Atty. for: STATE

Address: 10220 S. 76th Ave

City/State/Zip: Bridgeview

Telephone: 708 974 6200

ENTERED:

Dated: 2 24 10

_____
Judge

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINO**

PETITIONER'S COPY

# EXHIBIT I

# TRAVEL LETTER

July, 25,2013

I Peter Cahue father give permission for my son ▮▮▮▮▮ ▮▮▮▮▮ to travel to Mexico with his mother Jaded Mahelet Martinez on July, 26, 2013.

Peter Cahue
Father

Jaded Mahelet Martinez
Mother

"OFFICIAL SEAL"
VICTOR H. LARA
Notary Public, State of Illinois
My Commission Expires April 16, 2017
Commission No. 763859

25ᵗʰ of July, 2013
State of IL
County of Cook.

Exhibit B-1

# EXHIBIT J

OAK LAWN-HOMETOWN
School District 123

## Student Transfer Form

**Date:** 8/21/2013                    **State ID:** 188682115

**Pupil's Name:** ███████████████        **Address:** 9727 S Tripp Ave
                                                    Oak Lawn IL 60453

**Parent/Guardian Name:** Jaded Martinez

**Birthdate:** ████████2006      **Birthplace:** Oak Lawn IL

**Student's New Address :** Enrique Del Valle 116
                            Aguascalientes, Ags   Mexico  20000

**School/District Transferring to:** Nuevos Horizontes School
                            Aguascalientes, Ags.  MEXICO  20000

**Current Grade:** 02      **Days Present:**      **Days Absent**          **IEP:** No

**Transfer Date:** 8/21/2013

*Anne Marie McGovern*
Anne Marie McGovern - Principal
J M Hannum Elementary School

I do hereby give consent to release all educational,
psychological, social, and medical information.

**Parent/Guardian Signature**

cc: Parent          District Office
    Cumulative File  Student Services @ DO
    School Office    District Registrar

4201 West 93rd Street   Oak Lawn, IL 60453  P (708) 423-0150  F (708) 423-0160   d123.org

Learning today for a successful tomorrow.

# EXHIBIT K

Printed by: MARIA V. HERNANDEZ.                                    Page No:     1

PETER CAHUE                                  CAT — CHICAGO
9516 S KEELER AVE APT 1 S                    3123 W 63RD ST
OAK LAWN, IL 60453                           CHICAGO IL 60629
773-800-8085                                 773-436-8930

For/Para:    ███████████████████████

SERVICE              DATE  FROM              TO              DEPART   A

VOLARIS AEROLINEAS   16AUG  Chicago-Midwa  Zacatecas        7.00A    1
Y4 949
                 TERMINAL:
                         EQUIPMENT:

------------------------------------------------------------------------
AIR FARE:     264.55   TAXES/FEES:      30.45   AIR TOTAL  USD    295.00
                              DISCOUNT            USD       .00
                              INVOICE TOTAL       USD    295.00

PAYMENT: CASH
------------------------------------------------------------------------
RESERVATION NUMBERS:

GRACIAS POR PREFERIRNOS. / THANK YOU FOR CHOOSING US.
BOLETOS NO REEMBOLSABLES/PENALIDAD FOR CAMBIOS.
TICKETS NOT REFUNDABLE/ PENALTY APPLIES FOR CHANGES.
VEA LOS DETALLES COMPLETOS AL DORSO./ SEE DETAILS ON THE BACK.
SUGERENCIAS O PREGUNTAS MARQUE AL  1(877) — 830-0783
COMMENTS OR QUESTIONS CALL 1(877) — 830-0783





    

CST #2021587-40 - Registration as a seller of travel does not constitute approval by the state of California.

# EXHIBIT L

#11836

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE PARENTAGE OF: )
)
**PETER CAHUE,** )
Petitioner, ) 2014D 080158
and ) Case No.
) Cal:
)
**JADED M . MARTINEZ,** )
Respondent. ) 3521

## EMERGENCY PETITION FOR IMMEDIATE POSSESSION OF THE MINOR CHILD, FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION AND OTHER RELIEF

NOW COMES Petitioner, **PETER CAHUE,** by his attorneys, the Law Offices of Jeffery M.

Leving, Ltd., pursuant to 750 ILCS 45/7(a) (1994) and 735 ILCS 5/11-101 *et.seq*, and in support

thereof states as follows:

1. That simultaneously with this Emergency Petition for Immediate Possession of the

Minor Child, For Temporary Restraining Order, Preliminary and Permanent Injunction and Other

Relief, the Petitioner has filed a Petition to Establish a Father Child Relationship and For Other

Relief, which remains pending and undetermined before this Honorable Court.

2. That Petitioner and Respondent engaged in a sexual relationship on several occasions

which resulted in the birth of one (1) child, namely: ▮▮▮▮▮, born on ▮▮▮ 2006, presently age

8. Minor child was born in Cook County, Illinois.

3. Both parties signed a Voluntary Acknowledgment of Paternity (VAP) for the minor

child on ▮▮▮ 2006. A true and correct copy of said VAP is attached hereto and incorporated

herein as "**Exhibit A.**"

4. That the minor child lived in Cook County, State of Illinois with the Respondent since

his birth until last year July 2013.

5. That Illinois is the minor child's home state.

6. That on or about July of 2013, Respondent requested permission for the Petitioner to go to Mexico on vacation with the minor child. The agreement was for two to three weeks.

7. Respondent's flight back from Mexico was set for three weeks after she left to Mexico, and when Respondent missed her return flight, Petitioner suspected that the Respondent was not coming back.

8. Petitioner called the Respondent and attempted to try to get Respondent to return the minor child but Respondent refused.

9. Petitioner sent the Respondent money to purchase another flight, and Respondent failed to purchase another ticket.

10. Petitioner made reports with Skelly Mendoza of the Child Abduction agency regarding Respondent's failure to return the child.

11. Ms. Mendoza indicated to the Petitioner that since Respondent was already in Mexico, there was nothing Petitioner could do about same.

12. Petitioner continued to reach the Respondent and the minor child in Mexico and to maintain communication with the minor child despite the long distance.

13. On or about April of 2014, Respondent informed the Petitioner that the child was asking for the Petitioner and that Respondent was having discipline issues with the child and would therefore bring the child in April to the United States.

14. Petitioner and Respondent came to a verbal agreement that if Respondent returned the minor child for vacation in April, that Petitioner would allow the minor child to return to Mexico to finish off second grade in Mexico, and that Respondent would return the child to the United States in the summer permanently.

15. Respondent also represented to the Petitioner that she planned on moving back permanently to the United States given her failed business venture in Mexico.

16. Petitioner did not want the minor child to have to restart second grade in the United

States and skip a full year.

17. Respondent kept her word and returned the minor child for vacation in April, and Petitioner returned the minor child to Mexico to complete his school year.

18. Respondent returned the minor child to the United States on or about July 3, 2014.

19. The minor child resided with the Petitioner throughout July and August, 2014.

20. During the summer months, Respondent continually called the Petitioner and the minor child to try to convince the child to return to Mexico.

21. The minor child did not want to return to Mexico. The child represented that he was continually teased for his American accent and had difficulty adapting given that Spanish was not the child's primary language.

22. On or about August 16, 2014, Respondent called the Petitioner and informed him that if he did not return the child that she would be travelling to the United States to retrieve the child and take him back to Mexico.

23. Respondent returned to the United States yesterday, August 25, 2014 and went straight to Petitioner's home and retrieved the minor child.

24. Petitioner immediately went to the police station to which he was told there was nothing he could do as she was the mother.

25. Last night, August 25, 2014, Respondent informed the Petitioner that she knows a lot of people that can smuggle the minor child to Mexico.

26. On information and belief, Respondent is planning on taking the child to Mexico in the next few days.

27. Respondent is currently staying with her family members that reside in Oak Lawn, Illinois.

28. Petitioner is in need of a temporary restraining order that can be served on the Respondent immediately before she leaves the State of Illinois and the United States with the minor child.

29.     Petitioner is in need of an order turning over possession of the minor child to him to ensure that Respondent does not remove the minor child from the United States illegally.

30.     That Petitioner reasonably fears that if Respondent were given any advance notification of the presentation of the instant Emergency Petition, that she would remove the minor child permanently from this Court's jurisdiction.

31.     Unless Respondent—and other governmental agencies—are temporarily restrained and enjoined from removing the minor child from the State of Illinois and the United States, Petitioner reasonably fears that Respondent will remove the minor child permanently, in which event Petitioner and the minor child will suffer immediate and irreparable harm.

32.     Petitioner has a protectable interest and a legal right to the relief he is seeking.

33.     Petitioner has no adequate remedy at law.

34.     Petitioner will likely succeed on the merits of his custody action.

35.     Both Petitioner and the minor child are residents of the State of Illinois, this Court has jurisdiction over Respondent and over the minor child, and over the instant proceedings.

36.     In light of the circumstances of Petitioner, the requirement for bond should be waived.

37.     This matter is an emergency, as the minor child is at risk of being permanently removed from the United States, and Petitioner may never see his son again.

38.     The Affidavit of the Petitioner is attached hereto and is made a part hereof as **"Exhibit B."**

**WHEREFORE**, Petitioner, Peter Cahue, by his attorneys, the Law Offices of Jeffery M. Leving, Ltd., prays this Court for the following relief:

A.     That Respondent be ordered to turn over possession of the minor child to the Petitioner instanter;

B.     That Respondent, Jaded Martinez, together with agents, coworkers and others acting on her behalf, be restrained and enjoined from removing the minor child from the United States and

the State of Illinois.

      C.     That the requirement for bond be waived; and

      D.     For such other and further relief as this Court deems necessary to preserve and protect

the best interests of the minor child of the parties.

Respectfully Submitted,

By: _____

PETER CAHUE

_____
Law Offices of Jeffery M. Leving, Ltd.
One of Petitioner's attorneys

## VERIFICATION BY CERTIFICATION

      Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that statements set forth in the foregoing Petition are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
PETER CAHUE
Petitioner

#11836
Alexandra Martinez, Esq.
Law Offices of Jeffery M. Leving, Ltd.
19 South LaSalle Street, Suite 450
Chicago, IL 60603
(312) 407-6829

# Illinois Voluntary Acknowledgment of Paternity

**Instructions:** Please PRINT in BLACK ink. Press hard and use a ballpoint pen. Do not cross out words or make corrections or your form will be rejected. If you make a mistake, ask for a new form.

Read carefully and complete all requested information before signing this form. You may call the Child Support Customer Service Call Center at 1-800-447-4278 if you have questions. The child's name may be changed on the child's birth certificate by application within one year of completing this document. Questions about that process or about the birth certificate in general must be directed to the Illinois Department of Public Health, Division of Vital Records, at www.idph.state.il.us/vitalrecords or 217-782-6554.

| Child's First Name | Middle Name | Last Name (same as on birth certificate) | Sex (circle) (M) F |
|---|---|---|---|
| **Date of Birth (month/day/year)** ██-█-06 | **Place of Birth – Hospital Name** Christ Med Ctr | **City/State** Oak Lawn Il. | |

| Father's Name (first/middle/last) XXXXX Peter Cahue | Date of Birth (month/day/year) █-█-85 | Place of Birth (city/state) Illinois |
|---|---|---|
| **Address** 6744 S. Tripp | **City/State/Zip** Chicago Il. 60629 | **Social Security Number** █-██-2266 |

| Mother's Name (first/middle/last) Jaded Maheket Martinez | Mother's Maiden Name Martinez | Date of Birth (month/day/year) █-█-81 | Place of Birth (city/state) Mexico |
|---|---|---|---|
| **Address** 3039 W. 100th St | **City/State/Zip** Evergreen Park Il. 60805 | | **Social Security Number** XX |

Were you married to a man other than the biological father when this child was conceived or born? Yes ___ No XX
If yes, a Denial of Paternity must also be completed by the mother and husband/ex-husband to place the biological father's name on this child's birth certificate.

## Parents' Rights & Responsibilities
I state that:

1. I understand that this is a legal document. I understand that when the Voluntary Acknowledgment of Paternity is signed and witnessed, it is the same as a court order determining the legal relationship between a father and child.

2. I understand that if I am a minor, I have the right to sign and have this form witnessed without my guardian's permission. I understand that when the parents are minors, paternity is not conclusive until six months after the younger of the parents turns 18, however, a support order may be entered.

3. I acknowledge that I am the biological parent of the child named on this Voluntary Acknowledgment of Paternity and waive my rights to genetic testing.

4. I accept responsibility to provide financial support for my child. I understand that financial support may include child support and medical support starting from the child's birth until the child is at least 18 years old.

5. I understand that both parents have the right to all notices of any adoption proceedings.

6. I understand that this Voluntary Acknowledgment of Paternity does not give custody or visitation to the father. However, this Voluntary Acknowledgment of Paternity gives the father the right to ask the court for custody or visitation.

7. I understand that either the mother or father may withdraw the action of signing the Voluntary Acknowledgment of Paternity by signing a Rescission of Voluntary Acknowledgment of Paternity. The Rescission must be signed and received by the Department within 60 days of signing the Voluntary Acknowledgment of Paternity or the date of a proceeding relating to the child, whichever occurs earlier.

8. I have read the instructions on the back of this form, been provided an oral explanation about the Voluntary Acknowledgment of Paternity and understand my rights and responsibilities created and waived by signing this form. For an oral explanation, call the Child Support Customer Service Call Center at 1-800-447-4278.

| Father's Signature | Mother's Signature |
|---|---|
| **Date Signed** 03-29-06 | **Date Signed** 03-29-06 |
| **Print Name of Father** Peter Cahue | **Print Name of Mother** Jaded Martinez |
| **Witness' Signature** | **Witness' Signature** |
| **Print Name of Witness** Sandra Nieves | **Print Name of Witness** Sandra Nieves |
| **Witness Address** 4440 W. 95th St. Oak Lawn Il. 60453 | **Witness Address** 4440 W. 95th St. Oak Lawn Il. 60453 |

*Third Copy – Parent's Copy*

HFS 3416B (R-7-05)

IL478-2370

**For Official Use Only**

| Case # | Docket # | CP RIN | NCP RIN | Child RIN |
|---|---|---|---|---|



**EXHIBIT A**

#11836

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE PARENTAGE OF: )
                                    )

**PETER CAHUE,** )
    Petitioner, )

    and )
                                      )

**JADED M . MARTINEZ,** )
    Respondent. )

Case No.
Cal:

### AFFIDAVIT OF PETER CAHUE

PETER CAHUE deposes and states as follows: I make this Affidavit upon my personal knowledge, and if called on to testify in a Court of Law, I would testify as set forth herein.

1.    That Respondent and I engaged in a sexual relationship on several occasions which resulted in the birth of one (1) child, namely: ███████ born on ██████ 2006, presently age 8.

2.    Respondent and I signed a Voluntary Acknowledgment of Paternity (VAP) for the minor child on ██████ 2006.

3.    That the minor child lived in Cook County, State of Illinois with the Respondent since his birth until last year July 2013.

4.    That Illinois is the minor child's home state.

5.    That on or about July of 2013, Respondent requested permission from me to go to Mexico on vacation. The agreement was for two to three weeks.

6.    Respondent's flight back from Mexico was set for three weeks after she left to Mexico, and when Respondent missed her flight, I suspected that the Respondent was not coming back.

7.    I called the Respondent and attempted to try to get Respondent to return the minor child but Respondent refused.

8.    I sent the Respondent money to purchase another flight, and Respondent

1



EXHIBIT
B

failed to purchase another ticket.

9.   I made reports with Skelly Mendoza of the Child Abduction agency regarding Respondent's failure to return the child.

10.   Ms. Mendoza indicated to me that since Respondent was already in Mexico, there was nothing I could do about same.

11.   On or about April of 2014, Respondent informed me that the child was asking for me and that Respondent was having discipline issues with the child and would therefore bring the child in April to the United States.

12.   Respondent and I came to a verbal agreement that if Respondent returned the minor child for vacation in April, that I would allow the minor child to return to Mexico to finish off second grade in Mexico, and that Respondent would return the child to the United States in the summer permanently.

13.   I did not want the minor child to have to restart second grade in the United States and skip a full year.

14.   Respondent kept her word and returned the minor child for vacation in April, and I returned the minor child to Mexico to complete his school year.

15.   Respondent returned the minor child to the United States on or about July 3, 2014.

16.   The minor child resided with me throughout July and August, 2014.

17.   During the summer months, Respondent continually called me and the minor child to try to convince the child to return to Mexico.

18.   The minor child did not want to return to Mexico. The child represented that he was continually teased for his American accent and had difficulty adapting given that Spanish was not the child's primary language.

19.   On or about August 16, 2014, Respondent called me and informed me that if he did not return the child that she would be travelling to the United States to retrieve the child and take him back to Mexico.

20.     Respondent returned to the United States yesterday, August 25, 2014 and went straight to my home and retrieved the minor child.

21.     I immediately went to the police station to which I was told there was nothing I could do as she was the mother.

22.     Last night, on August 25, 2014, Respondent informed me that she knows a lot of people that can smuggle the minor child to Mexico.

23.     On information and belief, Respondent is planning on taking the child to Mexico in the next few days.

24.     Respondent is currently staying with her family members that reside in Oak Lawn, Illinois.

25.     I am in need of a temporary restraining order that can be served on the Respondent immediately before she leaves the State of Illinois and the United States with the minor child.

26.     That the minor child's possession needs to be turned over to me during the pendency of the proceedings to ensure the Respondent does not remove the minor child from the State of Illinois illegally.

27.     That I reasonably fears that if Respondent were given any advance notification of the presentation of the instant Emergency Petition, that she would remove the minor child from the United States immediately.

28.     Unless Respondent—and other governmental agencies—are temporarily restrained and enjoined from removing the minor child from the United States, I reasonably fear that Respondent will remove the minor child from this Court's jurisdiction, in which event  I and the minor child will suffer immediate and irreparable harm.

29.     I have a protectable interest and a legal right to the relief I am seeking.

30.     I have no adequate remedy at law.

31.     I will likely succeed on the merits of his custody action.

3

32.     Both the minor child and I are residents of the State of Illinois, this Court has jurisdiction over Respondent and over the minor child, and over the instant proceedings.

33.     In light of the circumstances of my circumstances, the requirement for bond should be waived.

34.     This matter is an emergency, as the minor child is at risk of being permanently removed from the United States, and I may never see his son again.


## FURTHER YOUR AFFIANT SAYETH NAUGHT


## CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

PETER CAHUE

#48717
Alexandra Martinez, Esq.
Law Offices of Jeffery M. Leving, Ltd.
19 South LaSalle Street, Suite 450
Chicago, Illinois 60603
(312) 407-6825

4

# EXHIBIT M

DATE: 03/13/2015

TO:     Honorable Judge Sharon O. Johnson
        Circuit Court of Cook County, Illinois
        Richard J. Daley Center, Room CL02
        50 West Washington Street
        Chicago, Illinois 60602

FROM: Jaded Martinez, Respondent (Mother of minor- ██████████
        Troje San Bartolo #104, Trojes de San Cristobal
        Aguascalientes, Ags. Mexico, C.P. 20908

DOCKET #14 D 80158

The court has scheduled a hearing date of March 18th, 2015 at 9:30 AM for the case named above. I Jaded Martinez do not recognize the jurisdiction of the United States, being that the habitual place of residence of my son and I is Mexico. Thus I have submitted the request for the international restitution of my son ████████ based on the Haya Convention. With the final purpose of returning the minor child (my son) to Mexico. The US Central Authority (State Department) will send a letter to your honor with the information mentioned above.

Thank you for your attention in this matter.

Sincerely,

*Jaded Martinez*

Jaded Martinez

cc: Peter Cahue, Plaintiff.
     6744 S. Tripp
     Chicago, IL 60632
     Tel: 773 800-8085

# EXHIBIT N

**✕✕     INFORME  DE  ENVIO     ✕✕**

mbre:

Número :                                          Fecha: 03-18-15 08:30

| Fecha/Hora | 3-18  8:30 |
|------------|-----------|
| Interlocutor |  |
| Tiempo | 0'46" |
| Modo | NORMAL |
| Pág. | 1 |
| Resultado | Correcto |

Correcto : Comunicación manual    ✱✱✱

## ✳ ✳ INFORME DE ENVIO ✳ ✳

Nombre:

Número :                                    Fecha: 03-18-15 09:12

| Fecha/Hora | 3-18  9:11 |
|------------|------------|
| Interlocutor | |
| Tiempo | 0'32" |
| Modo | NORMAL |
| Pág. | 1 |
| Resultado | Correcto |

✳✳✳ Correcto : Comunicación manual   ✳✳✳

# EXHIBIT O



United States Department of State

Washington, D.C. 20520

March 17, 2015

The Honorable Sharon D. Johnson
Cook County Circuit Court Domestic Relations Division
50 West Washington Street
Richard J. Daley Center
Office of the Presiding Judge - Suite 1901A
Chicago, IL 60602
Fax: (312) 603-8453

RE: Peter Cahue v. Jaded M. Martinez
Docket Number: 2014D80158

Dear Judge Johnson:

      I am writing to you because we understand that ███████████████████████ is currently the subject of a proceeding relating to custody before your court. You should therefore be aware that an application for the return of Alessandro to Mexico under the 1980 Hague Convention on the Civil Aspects of International Child Abduction (Convention) has been received by the Department of State, which serves as the U.S. Central Authority for the Convention. This fact may affect your administration of the custody proceeding before you.

      **Article 16** of the Convention provides that, "after receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained *shall not decide on the merits of rights of custody* until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice." (Emphasis added)

      The 1980 Hague Convention on the Civil Aspects of International Child Abduction ("Convention") entered into force between the United States and Mexico on October 1, 1991. The International Child Abduction Remedies Act, 42 U.S.C. § 11601-11610 (1988) ("ICARA") implemented the Convention in the United States.[1] The U.S. Department of State, Office of Children's Issues, performs the functions of the Central Authority for the United States under the Convention.[2]

      In sum, **Article 16** requires that when a court considering custody of a child receives notice that an application for return of a child under the Convention has been received, it should defer any decision on the merits of rights of custody until an appropriate federal or state court

---

[1] U.S. Department of State regulations implementing the Convention and ICARA can be found at 22 C.F.R Part 94. The Convention is available at 51 Fed. Reg. 10503 (1986), and is a treaty of the United States within the meaning of Article II and VI of the U.S. Constitution.

[2] The U.S. Department of State, Office of Children's Issues, acts as the U.S. Central Authority for the Convention pursuant to the authority granted by Executive Order 12648 and 22 C.F.R § 94.2. The Central Authority carries out the functions ascribed to it in Article 7. See also fn 3.

has determined that the child is not to be returned under the Convention. The applicant, the applicant's counsel, or the Department's Country Officer should be able to keep you informed of the status of the petition for return of the child.

This letter should not be construed as constituting an opinion of the United States or the Department of State, regarding the merits of custody or any other matter before the Cook County Circuit Court. The sole purpose of this letter is to give the court notice that the U.S. Central Authority has received an application under the Convention and to draw the court's attention to relevant federal law, including the requirements of Article 16. Should you have any questions or need additional information, please do not hesitate to contact Karla Brown at 202-485-6235.

Please find below internet links to the primary source material for the Convention.

1) The text of the Convention and the Department of State's legal analysis of the Hague Convention published in the Federal Register on March 26, 1986 (Vol. 51, No. 58), at http://travel.state.gov/content/dam/childabduction/Legal_Analysis_of_the_Convention.pdf;

2) The U.S. implementing legislation for the Convention ("ICARA"), at http://travel.state.gov/content/dam/childabduction/International_Child_Abduction_Remedies_Act.pdf;

3) The official explanatory report of the Convention done by Elias Perez-Vera, at http://hcch.e-vision.nl/upload/expl28.pdf. The Perez-Vera report is recognized by the Hague Conference on Private International Law as the official history and commentary on the Convention and is a source of background on the meaning of its provisions.

Thank you for your consideration.

Sincerely,

Henry Hand
Director
Office of Children's Issues

CC:     *Counsel for Petitioner*          CC:     *Respondent Pro Se*
        Elizabeth A. Demonte, Esq.                Jaded Mahelet Martinez Ruvalcaba

# EXHIBIT P

**Secretaría de Relaciones Exteriores**
Dirección General de Protección a Mexicanos en el Exterior
Derecho de Familia
Restitución Internacional de Menores

### Para llenado exclusivo de la Delegación de la SRE:

| AGUASCALIENTES | ESTADOS UNIDOS |
|---|---|
| **Delegación** | **País requerido** |

[Marque sólo una opción]

**Derechos de Visita**
**Access Rights** ☐

**Restitución Internacional**
**International Abduction** ☒ X

**Número de menores**
**Number of minors** 1

8

| Apellido paterno/Last name | Apellido materno/Middle name | Nombre(s)/First name |
|---|---|---|
| Edad/Age | | |

| Apellido paterno/Last name | Apellido materno/Middle name | Nombre(s)/First name |
|---|---|---|
| Edad/Age | | |

| Apellido paterno/Last name | Apellido materno/Middle name | Nombre(s)/First name |
|---|---|---|
| Edad/Age | | |

| Apellido paterno/Last name | Apellido materno/Middle name | Nombre(s)/First name |
|---|---|---|
| Edad/Age | | |

| Apellido paterno/Last name | Apellido materno/Middle name | Nombre(s)/First name |
|---|---|---|
| Edad/Age | | |



S.R.E
RECIBIDO
06 FEB. 2015
No. de Registro
Exp
DELEGACION AGUASCALIENTES

# SECRETARIA DE RELACIONES EXTERIORES
### SOLICITUD DE ASISTENCIA CON BASE EN LA CONVENCION DE LA HAYA SOBRE LOS ASPECTOS CIVILES DE LA SUSTRACCION INTERNACIONAL DE MENORES

El llenado de la presente solicitud es exclusivo del solicitante, favor de llenar los espacios con letra de molde o a computadora./ Applicant must fill this form exclusively. Please type or fill in the blanks the requested information.

Página | 2

## SRE
SECRETARÍA DE
RELACIONES EXTERIORES

**Número de menores**     1     **Derechos de Visita**
**Restitución Internacional**

**Number of minors**   1     **Access Rights**     **International Abduction**

| I. DATOS DEL MENOR/INFORMATION OF THE MINOR |
|---|

### NOMBRE DEL MENOR/NAME OF THE MINOR

| ██████ | ██████ | ██████ |
|---|---|---|
| Apellido paterno/Last name | Apellido materno/Middle name | Nombre(s)/First name |

| ██████ / ████ | OAK LAWN, IL | MEXICO AMERICANO |
|---|---|---|
| Fecha de nacimiento/Date of birth | Lugar de nacimiento/Place of birth | Nacionalidad/Nationality |

| ██████ / ████ | MASCULINO | 8 |
|---|---|---|
| Cumplirá 16 años el/Who will be the age of 16 years on | Sexo/Gender | Edad / Age |

| 471787132 | 03 / 08 / 2015 | |
|---|---|---|
| Número de pasaporte   Y    Fecha de Caducidad    Residencia habitual ANTES DE LA SUSTRACCION/ |
| Passport number    and    Expiry date    Habitual residence BEFORE THE ABDUCTION |

### INFORMACIÓN FÍSICA/PHYSICAL INFORMATION

| 58" | 85LBS | CAFÉ OBSCURO | CAFE |
|---|---|---|---|
| Estatura/Height | Peso /Weight | Color de cabello/Hair color | Color de ojos/Eyes color |

| LUNAR COMO DE 2 PULGADAS EN LA PARTE BAJA DERECHA DE LA ESPALDA |
|---|
| Señas particulares/Distinctive marks |

### POSIBLE UBICACIÓN/POBABLE LOCATION

| ██████ | ██████ | ------ |
|---|---|---|
| Calle/Street | Núm/Num   Int/Appt | Colonia |

| CHICAGO | COOK | ----------- |
|---|---|---|
| Ciudad/City | Municipio/County | Comunidad o pueblo/Community or town |

| ILLINOIS | USA | 60629 |
|---|---|---|
| Estado o provincia/State or region | País/Country | C.P. /ZIP Code |

| II. INFORMACION DE LA PERSONA O INSTITUCIÓN QUE SOLICITA LA RESTITUCION O EL GOCE DE DERECHOS DE VISTA/ |
|---|

## II. INFORMATION CONCERNING THE PERSON OR INSTITUTION TO WHOM THE CHILD IS TO BE RETURNED OR REQUESTS THE ENJOYMENT OF THE RIGHT OF ACCESS

RELACIÓN CON EL MENOR/ RELATIONSHIP TO CHILD/REN

Padre/ Father [  ]   Madre/ Mother [X]   Ambos/ Both [  ]   Institución/ Institution [  ]   Otro: / Other: _____

Página | 3

¿Ejercía el solicitante la patria potestad y/o custodia del menor?
Does the solicitor have the *patria potestas* and/or custody of the minor?   [  ] Sí/Yes   [X] No/No

| MARTINEZ | RUVALCABA | JADED MAHELET |
|---|---|---|
| Apellido paterno/Last name | Apellido materno/Middle name | Nombre(s)/First name |

| ████████ / 1987 | AGUASCALIENTES, MEXICO | MEXICAN |
|---|---|---|
| Fecha de nacimiento/Date of birth | Lugar de nacimiento/Place of birth | Nacionalidad/Nationality |

| | FEMENINO | |
|---|---|---|
| Otra nacionalidad/Other nationality | Sexo/Gender | Edad / Age |

INSTITUCIÓN/INSTITUTION (llenar sólo si el solicitante es una institución)/(fill only if the applicant is an institution).

| ---------------- | ---------------- |
|---|---|
| Nombre de la Institución/Institution's Name | Representante /Representative |

DIRECCIÓN/ADDRESS

| TROJE SAN BARTOLO | 104 | FRACC. TROJES DE SAN CRISTOBAL |
|---|---|---|
| Calle/Street | Núm/Num  Int/Appt | Colonia |

| JESUS MARIA | JESUS MARIA | ---------------- |
|---|---|---|
| Ciudad/City | Municipio/Municipality | Comunidad o pueblo/County or town |

| AGUASCALIENTES | MEXICO | 20908 |
|---|---|---|
| Estado o provincia/State or region | País/Country | C.P. /ZIP Code |

DATOS DE CONTACTO/ CONTACT INFORMATION

| (  ) ---------------- | (  ) ---------- | ( 449 )  920 -4115 |
|---|---|---|
| Teléfono de casa/Home number | Teléfono de oficina/Office number | Celular/Mobile |

| Jaded_martinez@yahoo.com | |
|---|---|
| Correo electrónico/E-mail | Otros/Others |

## III. INFORMACION DE LA PERSONA QUE PRESUNTAMENTE SUSTRAJO O RETUVO AL MENOR O IMPIDE LOS DERECHOS DE VISITA/INFORMATION CONCERNING THE PERSON ALLEGED TO HAVE WRONGFULLY REMOVED OR RETAINED THE CHILD, OR IMPEDE THE ACCESS RIGHTS

RELACIÓN CON EL MENOR/ RELATIONSHIP TO CHILD/REN                    Página | 4

| Padre / Father | **X** | Madre / Mother | | Ambos / Both | | Otro: / Other: _____ |
|---|---|---|---|---|---|---|

| CAHUE | VALDEZ | PETER |
|---|---|---|
| Apellido paterno/Last name | Apellido materno/Middle name | Nombre(s)/First name |

| ▮▮▮▮ / 1985 | CHICAGO,IL | AMERICANO |
|---|---|---|
| Fecha de nacimiento/Date of birth | Lugar de nacimiento/Place of birth | Nacionalidad/Nationality |

| | MASCULINO | 29 |
|---|---|---|
| Otra nacionalidad/Other Nationality | Sexo/Gender | Edad / Age |

| | DD / MM / AÑO | |
|---|---|---|
| Alias / Also know as | Número de pasaporte Y Fecha de Caducidad / Passport number and Expiry date | Residencia habitual / Habitual residence |

INFORMACIÓN FÍSICA/PHYSICAL INFORMATION

| 6′ | 210 LBS | CAFÉ OBSCURO | CAFÉ |
|---|---|---|---|
| Estatura/Height | Peso /Weight | Color de cabello/Hair color | Color de ojos/Eyes color |

| |
|---|
| Señas particulares/Distinctive marks |

POSIBLE UBICACIÓN/ PROBABLE LOCATION

| ▮▮▮▮ | ▮▮▮ | | |
|---|---|---|---|
| Calle/Street | Núm/num | Int/Appt | Colonia |

| CHICAGO, IL | COOK | |
|---|---|---|
| Ciudad/City | Municipio/County | Comunidad o pueblo/Community or town |

| ILLINOIS | E.U.A | 60629 |
|---|---|---|
| Estado o provincia/State or region | País/Country | C.P. /ZIP Code |

| ( )  ------------ | ( )  --------- | (▮▮▮▮ |
|---|---|---|
| Teléfono de casa/Home number | Teléfono de oficina/Office number | Celular/Mobile |

| | |
|---|---|
| Correo electrónico/E-mail | Otros/Others |

**IV. NARRACIÓN DE LOS HECHOS Y CIRCUNSTANCIAS EN QUE OCURRIÓ LA SUSTRACCIÓN O RETENCIÓN ILÍCITA DEL (LOS) MENOR(ES)/**

**IV. STORY OF THE FACTS AND CIRCUMSTANCES IN WHICH THE SUBTRACTION HAPPENED OR ILLICIT RETENTION OF THE MENOR**

Favor de indicar fechas, hora y lugar en que ocurrieron los hechos. Si requiere más espacio use las hojas que considere necesarias. / Please provide date, time, place and circumstances of the doing of the oval or retention. If you need more space, attach the sheets you require.

26 de Julio 2013, el me firmo una carta de permiso para ir a México sin fecha de retorno. Comenzamos a vivir en Aguascalientes, México. Peter comenzó amenazarme de que así me iba a ir, que ya sabía con quién me estaba metiendo, que yo sabía de sus conexiones con la familia michoacana y de su tío en el ejército. Que iba a venir por mi hijo cuéstele lo que le cueste y contra todo. Sé cómo es de explosivo, violento, sangre fría y de psicópata, aterrorizada temía por mi vida y el bien estar de mi hijo, solicite una orden de protección en contra de él. Inscribí a mi hijo en el Colegio Nuevos Horizontes y quedamos en acuerdo Peter y yo que mi hijo iría en cada una de las vacaciones escolares (Diciembre, Primavera, Verano).

Abril 2014- Mi hijo se va de vacaciones con su padre a Chicago, IL. Mi hijo viaja solo de Guadalajara a Chicago y regresa una semana después como acordado.

Julio 2014- Ya con un acuerdo verbal previo, de que mi hijo iría a visitar a su papa en cada una de las vacaciones del colegio, su papa compro los boletos de ida y regreso del 03 de julio al 16 de agosto de 2014 (boleto de regreso que tengo el cual Peter compro y firmo). Estuve en comunicación frecuente con mi hijo, el sábado 16 de Agosto fui al aeropuerto de Calera, Zacatecas a recogerlo como habíamos acordado. Después de esperar horas para que el saliera del vuelvo, la pregunte a la aerolínea sobre mi hijo y dijeron que no había ningún pasajero con ese nombre. Ansiosa de volver a verlo me doy cuenta que en dicho vuelvo jamás abordo. Intensamente desesperada, triste, nerviosa, me pego un ataque de ansiedad, llorando le marque a Peter sin respuesta alguna, después de insistir eh insistir por fin logre que me contestara. Al contestar pregunte qué había pasado con mi hijo que yo estaba en un aeropuerto que me toco 3 horas en llegar y que mi hijo no estaba, me contesto que se le paso que no se había dado cuenta que el vuelo salía ese día, todo claro que eran mentira, le dije que quería a mi hijo en el primer vuelo de regreso, que mi hijo comenzaba la escuela el 19 de Agosto y que me urgía que regresara. Le llame a mi mama de inmediato para que vieran que era lo que estaba pasando, le intentaron llamar y jamás les contesto. A mi hermana también le marque y sin éxito alguno logro que le contestara. Después de eso trate de llamarle y ya no contesto, por lo cual le suplique a mi papa que fuera a la casa de los papas de Peter donde él ahora vivía, para que me aclara lo que estaba pasando. Mi papa, fue a la casa del solo para preguntar qué era lo que había sucedido, pero él no estaba en casa y abrió la puerta su papa ▮▮▮▮▮▮▮. Mi papa al saber que Peter ni mi hijo estaban, le pregunto que si sabía lo que estaba pasando y la razón por la que Peter no había mandado a ▮▮▮▮ a México y ▮ ▮▮▮▮ le contesto que no sabía que estaba pasando que él le había dicho a Peter que mandara a esa criatura con su madre que ahí era donde pertenecía con su madre y que Peter enojado contesto que no se metiera en su vida que él sabía lo que estaba haciendo y que no regresaría al niño, mi papa se dijo que por favor le dijera a su hijo que lo llamara y se marchó. Durante toda la semana le pedí, implore, suplique que me mandara a mi hijo y él decía que no que ya no lo iba a enviar y que de hecho Alessandro ya no se quería regresar (cosa que él le decía que dijera, lo manipula como le da la gana, le dice que decir siempre). El jueves 21 de Agosto, me comento Peter que iban a ir a desayunar con la familia de mi hermana, Peter hasta ese entonces le dijo a mi hermana que necesitaba el pasaporte de mi hijo (ósea que nunca se lo pidió a mi papa para regresar a mi hijo

antes) que lo necesitaba para agregarlo a su seguranza. Mi hermana le dijo que eso lo tendría que hablar conmigo, cosa que hizo inmediatamente exigiéndolo enfurecido que se lo entregara, yo le conteste que no y que no se preocupara que yo ya mero llegaba. Ya que vi durante la semana que en verdad no me lo regresaría, compramos un boleto para el 24 de Agosto para exclusivamente ir por él y regresarme. Llegue a Chicago, IL el 25 de Agosto, por la tarde, al siguiente día fui a la casa varias veces durante el día, pero el coche de Peter no estaba, espere estacionada afuera de su casa hasta las 11pm llego junto con mi hijo. Le dije que iba por mi hijo comenzamos a discutir, en el cual yo le dije que no quería platicar frente a mi hijo, me lleve a mi hijo a mi casa. El siguiente día fui con un abogado para saber cómo era posible de llevarme a mi hijo legalmente de regreso a México, ya que el papa me amenazo el día anterior diciendo que ya había reportado el pasaporte me mi hijo como perdido y que tenía una alerta ámbar en Washington en contra mía, y que si me lo intentaba llevar me arrestarían por secuestradora. Al regresar a la casa por la noche, para mi sorpresa estaba la policía enfrente a mi casa preguntando por mí, me entregaron una orden de la juez para posesión inmediata de mi hijo y una demanda de custodia a favor del. Así mismo me dijo el policía que tenía 15 min para entregarle mi hijo a su papa, me morí en vida en ese mismo segundo. Me lleve a mi hijo a mi recamara para explicarle todo y decirle por qué se tenía que ir. El llorando me decía que ya se quería ir a vivir a México conmigo, al entregarle mi hijo a su papa que descaradamente estaba sentado encima de su coche con sus brazos cruzados muy según el con postura de poder. Mi hijo le decía al policía que él no se quería ir con su papa que él se quería regresar a México conmigo. Su papa lo cargo y sus palabras fueron después hablamos, no te preocupes yo te compro lo que tú quieras. Qué? Me tuve que quedar hasta el juicio el 17 de Septiembre de 2014.

En el juicio la juez pregunto que por qué no habíamos pedido el ¨removal de mi hijo, el cual mi abogada nunca me dijo que podía pedir. Me pregunto si tenía un juicio pendiente en México y yo le dije que sí, y me dijo la juez que tendría que hablar con el juez de México para ver quien tenía jurisdicción sobre el caso de por que el lugar habitual de residencia del menor en los últimos 12 meses fue en México y no Estados Unidos. Me regrese a México para solicitar la restitución de mi hijo y para seguir con el caso de custodia aquí en Aguascalientes.

## V. DATOS DE LOS PADRES/ PARENTS INFORMATION

¿Están o estaban casados? / Are you or were you married?

| Sí / Yes | No/No |
|----------|-------|
|          | X     |

En caso afirmativo, por favor llene lo siguiente: / If so, please fill the following:

| ------------------------ | DD / MM / YYYY |
|--------------------------|----------------|
| Lugar del matrimonio/Place of marriage | Fecha /Date |

| ------------------ | DD / MM / |
|--------------------|-----------|
| Lugar del divorcio/Place of divorce | Fecha /Date |

¿Hay alguna resolución o convenio judicial relativo a los menores?/
Is there any judicial decree related to the minor(s)?

(Deberá anexarse en su caso)/ (If so, please attach it)

| Sí /Yes | No/No |
|---------|-------|
|         | X     |

¿Habitaban juntos antes de la sustracción?
Were the parents living together before the abduction?

| Sí/Yes | No/No |
|--------|-------|
|        | X     |

## VI. PROCEDIMIENTOS O INSTANCIAS EN TRÁMITE/PROCEEDINGS IN PROGRESS

Si requiere más espacio incluya las hojas que considere necesarias. / If you need more space, attach the sheets you require.

- Procedimiento Especial Alimentos Provisionales y Definitivos. Expediente: 1243/2013 (Solicitado en Agosto 2013)
- Patria Potestad, Guarda y Custodia. Expediente: 1883/2014

## DATOS DE CONTACTO DEL ABOGADO / ATTORNEY'S CONTACT INFORMATION

| ( ) | ( ███████ | ( ████████ |
|-----|-----------|------------|
| Teléfono de casa/House telephone | Teléfono de oficina/Office telephone | Celular/Mobile |

|  | Licenciada Laura Estrada |
|--|--------------------------|
| Correo electrónico/E-mail | Otros/Others |

## VII. COMENTARIOS Y OBSERVACIONES/OTHER REMARKS

Peter Cahue, el papa de mi hijo Alessandro Jared Cahue es una persona muy agresiva. Vivi violencia domestica durante nuestra relacion y en 2009 casi me mata con una navaja de casar . Estuvo bajo investigacion por mi hijo con DCFS (DIF estadunidense) por abuso domestico. El estudio psicologia y manipula a mi hijo contra mi, mi hijo lo tiene con un super coco wash y ya no es el mismo nino de antes. En una ocassion le pego tan fuerte en el brazo que lo dejo moretiando por una semana. Tengo miedo por el bien estar mental, psicologico, emocional y fisico de mi hijo.

Mi hijo siempre a vivido conmigo solamente, el papa nunca jamas me a dado ningun tipo de ayuda economica o pension alimenticia para el. El no debe tener algun derecho sobre mi hijo.

Página | 8

## DOCUMENTOS QUE SE ANEXAN/DOCUMENTS ATTACHED

☒ FOTOGRAFIA DE MENOR/PHOTOGRAPH OF THE CHILD(REN)

☒ FOTOGRAFIA DE LA PERSONA QUE PRESUNTAMENTE SUSTRAJO AL (LOS) MENOR(ES)/PHOTOGRAPH OF THE PERSON ALLEGED TO HAVE WRONGFULLY REMOVED THE CHILD(REN)

☒ COPIA CERTIFICADA DEL ACTA DE NACIMIENTO DEL(OS) MENOR(ES)/CERTIFIED COPY OF THE BIRTH CERTIFÍCATE OF THE MINOR(S)

☐ COPIA CERTIFICADA DEL ACTA DE MATRIMONIO/CERTIFIED COPY OF THE MARRIAGE CERTIFICATE

☐ SENTENCIA QUE DECRETA EL DIVORCIO/DIVORCE DECREE

☐ ACUERDO O CONVENIO JUDICIAL RELATIVO A LA CUSTODIA Y/O AL EJERCICIO DEL DERECHO DE VISTA/JUDICIAL AGREEMENT CONCERNING CUSTODY OR RIGHT OF ACCESS

☐ OTROS (OTHER):

_____

Ags/ _____    06/02/2015
Lugar y firma/Place and Signature         Fecha/Date

**ANEXO I / ANNEX I**
**(LLENAR ESTA PARTE SÓLO SI SE SOLICITA LA RESTUTUCIÓN O DERECHOS DE VISITA DE MÁS DE UN MENOR/ FULFILL THIS PART ONLY IF YOU ARE REQUESTING THE RETURN OR ACCESS RIGHTS OF MORE THAN ONE CHILD)**

**NOMBRE DEL MENOR /NAME OF THE MINOR**

Página | 9

Apellido paterno/Last name     Apellido materno/Middle name     Nombre(s)/First name

DD / MM / YYYY

Fecha de nacimiento/Date of birth     Lugar de nacimiento/Place of birth     Nacionalidad/Nationality

DD / MM / YYYY

Cumplirá 16 años el/Who will be the age of 16 years on     Sexo/Gender     Edad / Age

DD / MM / YYYY

Número de pasaporte/     Y     Fecha de Caducidad/     Residencia habitual ANTES DE LA SUSTRACCION/
Passport number     and     Expiry date     Habitual residence BEFORE THE ABDUCTION

**INFORMACIÓN FÍSICA/PHYSICAL INFORMATION**

Estatura/Height     Peso /Weight     Color de cabello/Hair color     Color de ojos/Eyes color

Señas particulares/Distinctive marks

**NOMBRE DEL MENOR /NAME OF THE MINOR**

Apellido paterno/Last name     Apellido materno/Middle name     Nombre(s)/First name

DD / MM / YYYY

Fecha de nacimiento/Date of birth     Lugar de nacimiento/Place of birth     Nacionalidad/Nationality

DD / MM / YYYY

Cumplirá 16 años el/Who will be the age of 16 years on     Sexo/Gender     Edad / Age

DD / MM / YYYY

Número de pasaporte/     Y     Fecha de Caducidad/     Residencia habitual ANTES DE LA SUSTRACCION/
Passport number     and     Expiry date     Habitual residence BEFORE THE ABDUCTION

**INFORMACIÓN FÍSICA/PHYSICAL INFORMATION**

Estatura/Height     Peso /Weight     Color de cabello/Hair color     Color de ojos/Eyes color

*En caso de requerir más espacio para otro menor, favor de fotocopiar la presente hoja / If you need more space, please photocopy this page.*

## ANEXO II    PROPUESTA DE RETORNO DEL MENOR/PROPORSAL FOR RETURN

Llenar solo si usted solicita derecho de visita con el menor. Si requiere mas espacio, favor de anexar las hojas necesarias. / Fill only if you request Access. If you need more space attach the sheets you require

incluir el nombre de la persona que viajaria con el menor. / Including the name of the person who would travel with the child if return is ordered.

MI HIJO ███████ MARTINEZ DEBE VIVIR CONMIGO POR EL CARIÑO QUE LE BRINDA UNA MADRE, QUE EN NINGUN LUGAR SE LO PUEDEN DAR Y EL CUAL ES NECESARIO PARA QUE EL TENGA UN CRECIMIENTO SANO Y POSITIVO, EL ES MI RAZON POR LA CUAL YO VIVO Y TRATO DE SER UN MEJOR SER HUMANA. ███████ TENDRA EN EL PAIS DE MEXICO UNA MEJOR CALIDAD DE VIDA YA QUE EN AGUASCALIENTES DONDE HABITAMOS, PARA EMPEZAR UNA CALIDAD DE NIÑEZ INCOMPARABLE CON LA DE ESTADOS UNIDOS, EL LUGAR DONDE VIVIMOS ES UN FRACCIONAMIENTO PRIVADO LLAMADO TROJES DE SAN CRISTOBAL EL CUAL SE ENCUENTRA EN UNA DE LAS MEJORES ZONAS DE AGUASCALIENTES, ES UN LUGAR CERRADO CON VIGILANCIA LAS 24 HORAS EL CUAL CUENTA CON AREAS RECREATIVAS QUE INCLUYE CANCHAS DE FUTBOL, AREA DE JUEGOS, AREA DE CONVIVENCIA, AREAS VERDES, MINI SUPER, CAFETERIA, GYMNASIO Y SERVIOS BASICOS. LO MAS IMPORTANTE ES EL QUE SE PUEDE DESARROLLAR EN UN AMBIENTE SOCIAL Y CULTURAL POSITIVO Y FAMILIAR, EL CUAL ES POSIBLE POR EL TIPO DE PERSONAS CON LAS QUE SE CONVIVE TANTO EN SU ESCUELA COMO EN EL LUGAR QUE VIVIMOS. ███████ UN NIÑO CON LA HABILIDAD DE ADAPTARSE EN CUALQUIER AMBIENTE, JUEGA FUTBOL TODOS LOS DIAS CON SUS AMIGUITOS CUALES LO VIENEN A BUSCAR DIARIO. EL COLEGIO PRIVADO EN EL CUAL ESTABA ES UNO DE LOS MEJORES EN EL ESTADO, MITAD DEL DIA ESCOLAR ERA EN INGLES Y LA OTRA EN ESPAÑOL, SE ENSEÑAN CHINO MANDARIN, Y LO LLEVABAN A MONTAR CABALLO. TENEMOS LA FACILIDAD DE IR A CABALGATAS CON MI FAMILIA CADA FIN DE SEMANA, E IR A RANCHOS DONDE TIENEN ANIMALES DE RANCHO Y CONVIVIR CON ELLOS. PODEMOS IR A PASEOS EN CUATRIMOTO, PUES TODA MI FAMILIA TIENE MOTOS Y LOS NIÑOS TAMBIEN. EL CLIMA ES CALIDO POR LA MAYOR PARTE DEL TIEMPO, TIENE LA OPORTUNIDAD DE SALIR AL AIRE LIBRE Y VIVIR COMO UN NIÑO, NO ESTAR SOLO ADENTRO JUGANDO VIDEO JUEGOS O VIENDO PELICULAS COMO EN CHICAGO POR EL CLIMA EXTREMO.

EN CHICAGO VIVE EN EL SOTANO NO TERMINADO (SIN RECAMARAS, PISO DE CEMENTO) DE SU ABUELA, EN UN BARRIO DONDE ES CONOCIDO POR TENER PANDILLAS SUMAMENTE PELIGROSAS, DE HECHO EN SU MISMA CUADRA A UNAS 9 CASA MATARON A 2 PANDILLEROS EN PLENA CALLE, LE CRISTALIZARON EL COCHE A PETER Y LE ROBARON SU SISTEMA DE AUDIO. MI HIJO SE BAÑA EN UN SOTANO DONDE NI HAY BAÑO ES SOLO UNA REGADERA A UN LADO DEL LAVADO DE ROPA (EN LA NUESTRA CASA DE AGUASCALIENTES TIENE SU PROPIA RECAMARA Y TENEMOS 3 BAÑOS EL Y YO). LA ESCUELA DONDE VA ES UNA ESCUELA PUBLICA DE CHICAGO LAS CUALES TIENEN LA REPUTACION DE SER LO PEOR EN ESE NIVEL ACADEMICO, DE INSEGURIDAD, Y EN LAS CUALES NO TIENEN NINGUN TIPO DE ACTIVIDAD EXTRACURRICULAR. LA CLASE DE MI HIJO TIENE 40 ESTUDIANTES CON SOLO UNA MAESTRA CUANDO EN AGUASCALIENTES ERAN 10 ESTUDIANTES CON 2 MAESTRAS UNA MAESTRA PRINCIPAL Y UNA AYUDANTE. APRENDE EL ESPAÑOL EN INGLES AL MISMO TIEMPO A LA PERFECCION, EL CUAL LO AYUDARA EN SU FUTURO PROFESIONAL YO LE ENSEÑO RESPETO, RELIGION, EDUCACION, VALORES Y CALIDES HUMANA Y SU PAPA LO TRATA COMO SI EL FUERA SU AMIGO Y LO DEJA HACER LO QUE EL QUIERA. CUANDO EL QUIERE Y LO QUE DICE MI HIJO ESO SE HACE SOLO PARA GANARSELO. YO PIENSO LLENAR A MI HIJO DE AMOR Y BRINDARLE LO MEJOR QUE YO LE PUEDA DAR EN TODO ASPECTO. SOY SU AMIGA PERO PRIMORDIALMENTE SOY SU MAMA Y MI TRABAJO ES CREAR A UN HIJO MODELO PARA SU FUTURO Y PARA QUE SEA UN EJEMPLO A SEGUIR.

# IV. STORY OF THE FACTS AND CIRCUMSTANCES IN WHICH THE SUBSTRACTION HAPPENED OR ILLICIT RETENTATION OF THE MINOR

July 26th 2013, Peter Cahue my sons' father signs a notarized letter with no return date, giving permission for my son to go to Mexico. Peter started to threaten me,that I didn't know who I was messing with, that I knew that he has connections with the Mexican Cartel "La Familia Michoacana" and his uncle is one of the top generals in the Mexican military. That he was going to come for my son cost him what it cost him and against everything. I know how his extremely explosive, violent, cold blooded and a total psychopath, terrified for my life and the well-being of my son I ordered an order of protection against him. I registered my son in one of the best private schools in Aguascalientes called "Colegio Nuevos Horizontes" and in the best soccer school there is, called Cardenales. Peter and I had an agreement that my son would go to Chicago in every single one of his school vacations ( Winter, Spring, Summer and long weekends).

April 2014- My son goes on vacation to Chicago, IL with his father Peter Cahue. My son flies alone with the flight attendant from Guadalajara, Jal. – Chicago, IL and returns same route back a week later as previously agreed.

July 2014- With an previous verbal agreement, that my son would visit his dad in each one of his school vacations, his dad bought the plane tickets there and back from the 3rd of July returning on August 16th of 2014 (return flight ticket which I have that Peter bought and signed). I was in constant communication with my son, on Saturday 16th of August I went to pick up my son at the airport located in Calera, Zac. that is 3 hours away, like we had agreed. After waiting for hours for my son to get out from his flight, I asked the airline about my son, that it seemed that everyone had gone off the flight except him and they told me that there was no passenger with that name on the flight. Anxious to see him again, I find out that he never even boarded the plane. Intensely desperate, sad, nervous, I almost had an anxiety attack. Crying inconsolably I called Peter, but he didn't answer after calling and calling I finally got him to answer. When he finally did answer I asked him what had happened with my son,that I was in the airport that had taken me three hours to get to, and that my son wasn't there. He told me that it had skipped his mind that the return flight was that day, everything was off course a lie. I told him that I wanted my son on the first flight back, that my son was starting school on the 19th of August and that was it was urgent form him to return him to me, he hung up on me. I called my mom immediately so she could figure out what was going on, they tried calling Peter but he never answered. I also called my sister and told her to call him but he also didn't answer her calls. After that I tried calling and he wouldn't answer any more, for which reason I begged my dad to go to Peters parents' house (where Peter lives) to try to figure out what was going on. My dad went to Peters parents' house only to ask what had happened, but Peter wasn't home and

Peters dad ███ opened the door. When my dad was told that neither Peter or my son was there, he asked him if he knew what was going on, why had Peter not sent my son ███████ to Mexico and ███████ answered that he didn't know what was going on, that he had told Peter to return his son to his mother, that next to his mother is where he belonged. That Peter enraged had told his father to not get in his life that he knew what he was going and that he would not return my son. My dad told ███ to tell Peter to call him and he left. During the whole week I asked, begged, implored Peter to send my son back to me and he would say that he would not send him back. On Thursday 21st of August, Peter told me that he and my son where going to eat lunch with my sister and her family, and until then did he tell my sister he needed my sons passport (he had never asked for my sons passport before when my son was supposed to return to Mexico on the 16th of the same month) that he needed the passport to put my son in his insurance. My sister told him that he would need to talk to me, he called me immediately furious demanding that I give it to him, and I told him no and that he didn't have to worry that I was going to go there in a few days. Now that I saw during the week that he wasn't going to return my son to me, I bought a plane ticket for the 24th of August to exclusively go for my son and come back to Mexico. I got to Chicago on the 25th of August, and I went to his house in the evening, and the next day I went various times during the day, but Peter's car wasn't there, I parked outside his house and waited until 11 pm when he got there with my son. I said I was there for my son and we started to argue, in which I told him that I didn't want to argue in front of my son, I took my son home. The next day I went with a lawyer to see how I could return with my son to Mexico legally, because the previous night he had threatened me that he had reported my sons passport and put an amber alert in Washington against me and that if I tried taking him I would get arrested for child kidnapping. When I returned to my parents' house that night, to my surprise the police was in front of my house asking for me, they gave me an order from the judge for immediate possession of my son in favor of Peter. The police told me I had 15 min to give my son to Peter, in that second my heart and soul fell to the floor and I was alive but emotionally dead. I took my son to the room to explain to him peacefully what was going on and to tell him give he had to go with his dad for right now and that I was going to fight for him. Crying he told me he wanted he wanted to live with me that he wanted to go back to Mexico with me. When I went outside to give Peter my son, Peter was with this Im the man posture sitting with his arms folded on top of his car, my son kept telling the officer that he didn't want to go with his dad that he wanted to go back to Mexico with me. His dad carried him and told him we will talk when we get home, don't worry I'm going to buy you whatever you want (WHAT??!!). I had to stay until the court date which was on the 17th of September of 2014.

In court the judge asked me why hadnt I asked for a "removal" of my son, my attorney never told me I was able to request one (I wasnt even aware what a removal existed, if I did it would have been the first thing I would have asked for). The judge asked me if I had a case pending in Mexico in regards to this and I told her yes, and the judge said she would have to speak to the judge in Mexico to see who had jurisdicción over the matter. Reason being is that the childs habitual place of residence in the last 12 months was Mexico and not in the USA. I returned to Mexico to file the restitution of my son and to continue the custody case here in Aguascalientes.

## ANEXO II PROPOSAL FOR RETURN

My, son ███████████████████████ should live with me because of the unconditional love he receives from his mother and in no other place in the world he will receive and that is necessary for him to have a healthy and positive growing experience. He is the reason for which I live and try and strive to be a better human being. ██████████ in Mexico he will have a better quality of life, in Aguascalientes where we live the quality of life is incomparable with that of Chicago in the good sense. Where we live is an enclosed private suburb called Trojes de San Cristobal which is located in one for the best areas of the State. It's an enclosed place with private security 24 hours a day, recreational areas which include 3 soccer fields, park with playground, common areas for cook outs, green area for dogs, mini supermarket, cafeteria, gymnasium and basic services. The most important thing is that he can develop in a positive social, cultural and family friendly ambiance, which is possible because of the people that he lives with every day in his school and where we live people that are kindhearted and educated. ██████████ is child who is able to adapt easily in any given environment, he plays soccer everyday with his friends which come to look for him every day. The private school he was enrolled is one of the best and exclusive in the state, have the day was taught in English and the other in Spanish, he was also taught Mandarin Chinese and they would have a horse riding lessons. In Aguascalientes we have the ability to go on horse excursions with our family that had horses every weekend, we would go to ranches that had farm animals and be able to touch and play with them. We could go on a day of four-wheelers in the cabins my family has. The climate is always perfect, he has the opportunity to breath the fresh air and live like a happy normal child, and not live inside the house playing video games or watching movies like in Chicago (because of the routing and the extreme climate).

In Chicago my son lives in an unfinished basement (no bedrooms, no bathroom, and cement floors) in his grandma's house. In an area that is known for having very dangerous gangs. As a matter of fact in same block 9 houses away from his house in the middle on the street they killed 2 people, they broke his windows and stole his audio system. My son takes showers in a basement where there is no washroom, were there is only a shower head next to the washer and dryer, were in our house in Mexico we live in a 3 bed, 3bath house for only my son and I, house that I got just for him because its ½ a block from his school and his friends live near. The school he goes to in Chicago is a public school which is known for having bad academic level, insecurity, and doesn't have any extracurricular activities. My sons' class size in Chicago is of 40 students with only one teacher, in his school in Aguascalientes he had 20 students a teacher and a teacher helper (both with teaching degrees). In Aguascalientes he learns written and spoken Spanish and English to perfection, which now in days is absolutely necessary for his professional future. I teach

him respect, religion, education, values, morals and human kindness, but most importantly I give him all the love I have. His dad treats him like just a friend and lets him to whatever he wants, whenever he wants, and whatever my son says is what is going to be done even if it's wrong. I'm going to give my son and give the best that I can give him in every single way, shape and form. I'm his friend but primarily I'm his mother and my job is to create and nourish a model son for his future and for my son to me an good example to society.

## CERTIFICATION OF VITAL RECORD

# STATE OF ILLINOIS

DEPARTMENT OF PUBLIC HEALTH - DIVISION OF VITAL RECORDS

MATCHING DC

| REGISTRATION DISTRICT NO. | **16.0** | STATE OF ILLINOIS **CERTIFICATE OF LIVE BIRTH** | CHILD'S BIRTH NUMBER **2006 022** |
| REGISTERED NUMBER | | | **112** |

| 1. CHILD'S NAME | FIRST | MIDDLE | LAST | 2. DATE OF BIRTH (MONTH, DAY, YEAR) **2006** | 3. TIME **0** |
| 4. SEX **Male** | 5. CHILD'S BLOOD TYPE ~ | 6. CITY, TOWN, TWP., ROAD DIST. NO., OR LOCATION OF BIRTH **OAK LAWN** | | 7. COUNTY OF BIRTH **COOK** | |
| 8. PLACE OF BIRTH **Hospital** | | 9. FACILITY NAME (IF NOT INSTITUTION, GIVE STREET AND NUMBER) **Advocate Christ Medical Center** | | | |

I CERTIFY THAT THIS CHILD WAS BORN ALIVE AT THE PLACE AND TIME AND ON THE DATE STATED. (SIGNATURE OPTIONAL)

10a. *Sandra Nieves*

10b. DATE SIGNED (MONTH, DAY, YEAR) **03-28-2006**
ILLINOIS LICENSE NUMBER
10c.

ATTENDANT'S NAME AND TITLE (IF OTHER THAN CERTIFIER) (TYPE/PRINT)
11. **Fouad Al-Qawasmi M. D.**

CERTIFIER'S NAME AND TITLE (TYPE/PRINT)
12. **Sandra Nieves**
**Vital Rec Asst**

ATTENDANT'S MAILING ADDRESS (STREET AND NUMBER OR RURAL ROUTE NU. TOWN, STATE, ZIP CODE)
13. **7380 W. 87th Street**
**Bridgeview Il 60455**

| LOCAL REGISTRAR'S 14. SIGNATURE ► *David Orr* | 15. *KBO* | 16. DATE FILED BY LOCAL REGISTRAR (MONTH, DAY, YEAR) **APR 04 2006** |

| 16. MOTHER'S MAIDEN NAME (FIRST, MIDDLE, LAST) **Jaded   Mahelet   Martinez** | 17. DATE OF BIRTH (MONTH, DAY, YEAR) **1987** | 18. BIRTHPLACE (STATE OR FOREIGN **MEXICO** |
| 19a. RESIDENCE-STREET AND NUMBER **3032 W 100th St** | 19b. CITY, TOWN, TWP., OR ROAD DIST. NO. **EVERGREEN PARK** | 19c. INSIDE CIT Y |
| 19d. COUNTY **COOK** | STATE 19e. IL | MOTHER'S MAILING ADDRESS (IF SAME AS RESIDENCE, ENTER ZIP CODE ONLY) 19f. **60805** | |
| 20. FATHER'S NAME (FIRST, MIDDLE, LAST) **Peter         Cahue** | 21. DATE OF BIRTH (MONTH, DAY, YEAR) **1985** | 22. BIRTHPLACE (STATE OR FOREIG **ILLINOIS** |

I CERTIFY THAT THE PERSONAL INFORMATION PROVIDED ON THIS CERTIFICATE IS CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.
23. INFORMANT'S SIGNATURE (OPTIONAL)

**952541**

This is to certify that this is a true and correct copy of the official record filed with the Illinois Department of Public Health.

DATE ISSUED

**DEC 17 2010**

*Damon T. Arnold, M.D., M.P.H.*
DAMON T. ARNOLD, M.D., M.P.H.
STATE REGISTRAR



# SERVICIO EXTERIOR MEXICANO

## COPIA CERTIFICADA DE ACTA DE NACIMIENTO



EN CHICAGO, ILLINOIS
DE DICIEMBRE
OFICINA DEL SERVICIO EXTERIOR MEXICANO, SE ABIERTA LA PRESENTE

DE DOS MIL DIEZ,

EL DIA VEINTITRES
ANTE ESTA

CLAVE UNICA DE REG. DE POBLACION.
99 050 08 10 03318 D

| PAIS | CIUDAD | OFICINA | ACTA | AÑO | CLASE | FECHA DE REGISTRO DIA | MES | AÑO |
|------|--------|---------|------|-----|-------|------|------|------|
| EU | CG | CG | 3318 | 2010 | NA | 23 | 12 | 2010 |

**REGISTRADO**

NOMBRE: ▬▬▬▬▬▬▬ CAHUE

FECHA DE NACIMIENTO ▬▬▬▬     HORA 09:24 A.M.

LUGAR DE NACIMIENTO OAK LAWN, ILLINOIS, ESTADOS UNIDOS DE AMERICA

FUE PRESENTADO: VIVO [X] MUERTO [ ] SEXO: MASCULINO [X] FEMENINO [ ]

COMPARECIO: EL PADRE [ ] LA MADRE [ ] AMBOS [X] PERSONA DISTINTA [ ]

**PADRES**

NOMBRE DEL PADRE PETER CAHUE    EDAD 25 AÑOS
NACIONALIDAD ESTADOUNIDENSE    OCUPACION EMPLEADO
NOMBRE DE LA MADRE JADED MAHELET MARTINEZ RUVALCABA    EDAD 23 AÑOS
NACIONALIDAD MEXICANA    OCUPACION EMPLEADA
DOMICILIO(S) 8727 S TRIPP, OAK LAWN, ILLINOIS 60453 EUA

**ABUELOS**

ABUELO PATERNO ELPIDIO CAHUE    NACIONALIDAD MEXICANA
ABUELA PATERNA JUANA VALDEZ    NACIONALIDAD MEXICANA
DOMICILIO(S) 6744 S TRIPP, CHICAGO, ILLINOIS 60629 EUA
ABUELO MATERNO MIGUEL ANGEL MARTINEZ VALDIVIA    NACIONALIDAD MEXICANA
ABUELA MATERNA NATALIA RUVALCABA GALLEGOS    NACIONALIDAD MEXICANA
DOMICILIO(S) 8727 S TRIPP, OAK LAWN, ILLINOIS 60453 EUA

**TESTIGOS**

NOMBRE LISETT GONZALEZ    NACIONALIDAD ESTADOUNIDENSE
DOMICILIO 4051 W BARRY AVE, CHICAGO, ILLINOIS 60641 EUA    EDAD 27 AÑOS
NOMBRE ANTONIO J. BACA    NACIONALIDAD ESTADOUNIDENSE
DOMICILIO 4413 S KEELER, CHICAGO, ILLINOIS 60632 EUA    EDAD 27 AÑOS

HUELLA DIGITAL DEL REGISTRO

EL PADRE      LA MADRE

TESTIGO      TESTIGO

SELLO

**REPRESENTACION CONSULAR**

SE DIO LECTURA A LA PRESENTE ACTA Y CONFORMES CON SU CONTENIDO LA RATIFICAN
Y FIRMAN QUIENES EN ELLA INTERVINIERON Y SABEN HACERLO Y QUIENES NO, IMPRIMEN
SU HUELLA DIGITAL. DOY FE. &c. &c. CONSUL GENERAL
DE MEXICO EN FUNCIONES DE OFICIAL DEL REGISTRO CIVIL

MANUEL RODRIGUEZ ARRIAGA
NOMBRE      FIRMA

LA PRESENTE ACTA TIENE ANEXAS LAS ANOTACIONES SIGUIENTES:

00535

# Servicio de Traducción

Yo, Jaded Mahelet Martínez Ruvalcaba, no requiero de servicio de traducción para comunicarme con el abogado que proporcione la Autoridad Central estadounidense para caso de restitución internacional de mi hijo ███████████████ Ya que soy bilingüe en el idioma inglés y español.

_____          16 / Febrero / 2015
          Firma                                          Fecha

# Need for Translator

I Jaded Mahelet Martinez Ruvalcaba, will not need any translating assistance to communicate with the attorney given by the United States Central Authority in the International Restitution case of my son ████████████████ I am fluent in written and spoken English.


_____
Signature

16 /Febrero /2015
Date

## Documentation and Financial ability to Travel

I Jaded Mahelet Martinez Ruvalcaba, do count with the necessary migratory documentation to travel to the United States, but do **_not_** have sufficient financial resources to travel to the United States to be present for a hearing in regards to the international restitution of my son █████████████

_Jaded Martinez_
Signature

16/Febrero/2015
Date

## Documentación y Recursos Suficientes para Viajar

Yo, Jaded Mahelet Martínez Ruvalcaba, si cuento con los documentos migratorios
requeridos para viajar a Estados Unidos de America. No cuento con los recursos suficientes
y necesarios para viajar a Estados Unidos y estar presente en la audiencia que sea fijada
para la restitución de mi hijo menor █████████████████

_____
Firma

16 / Febrero / 2015
_____
Fecha



We the People

Of the United States,
in Order to form a more perfect Union,
establish Justice, insure domestic Tranquility,
provide for the common defense,
promote the general Welfare, and secure
the Blessings of Liberty to ourselves and
our Posterity, do ordain and establish this
Constitution for the United States of America.

SIGNATURE OF BEARER / SIGNATURE DU TITULAIRE / FIRMA DEL TITULAR

PASSPORT
PASAPORTE

UNITED STATES OF AMERICA

Type / Type / Tipo    Code / Code / Código    Passport No. / No. du Passeport / No. de Pasaporte
P                     USA                     471787132

Surname / Nom / Apellidos

Given Names / Prénoms / Nombres

Nationality / Nationalité / Nacionalidad
UNITED STATES OF AMERICA

Date of birth / Date de naissance / Fecha de nacimiento
2006

Place of birth / Lieu de naissance / Lugar de nacimiento    Sex / Sexe / Sexo
ILLINOIS, U.S.A.                                             M

Date of issue / Date de délivrance / Fecha de expedición    Authority / Autorité / Autoridad
04 Aug 2010                                                 United States

Date of expiration / Date d'expiration / Fecha de caducidad  Department of State
03 Aug 2015

Endorsements / Mentions Spéciales / Anotaciones
SEE PAGE 27                                                 USA

P<USACAHUE<MARTINEZ<<ALESSANDRO<JARED<<<<<<<
471787132BUSA0603283M1508031181763089<421648

## CIVIL CODE FOR THE STATE OF AGUASCALIENTES




**SECTION ONE: ON PERSONS**
**TITLE FIFTH: ON MARRIAGE**
**CHAPTER XII: ON DIVORCE**

**Article 305.** The divorce decree will designate the parent or parents, ancestors or legal guardians that will have parental authority/responsibility (*patria potestas*) and custody of the children, according to the following rules:

I.    If the grounds for divorce are among those listed in any of the sections of article 289 except for VI, VII and XVII[1], the children will remain under the custody of the innocent spouse.

However upon the death of the innocent spouse, the guilty spouse will recover the children unless the grounds for divorce are those contemplated in sections III (attempt to prostitute the spouse), IV (inciting the spouse to commit a crime), V (immoral acts intended to corrupt the children) or XV (habitual gambling, drinking or drug use), in which case the children will be under the parental authority/responsibility (*patria potestas*) of the corresponding ancestor or legal guardian.

II.   If the grounds for divorce are among those contemplated in sections VI ( suffer from syphilis, tuberculosis or any other chronic or incurable disease that is also contagious or hereditary as well impotence unknown at the time of marriage) and VII (incurable mental illness), the children will remain under the parental authority/responsibility (*patria potestas*) of the healthy spouse and upon his or her death, under the parental authority/responsibility (*patria potestas*) of the corresponding ancestor or legal guardian named if none exist.

---

[1] These are: adultery; pregnancy of the wife by a man other than the husband, at the time of the marriage and unknown to the husband; attempt to prostitute the spouse; inciting the spouse to commit a crime; immoral acts intended to corrupt the children; abandoning the household for more than six months without just cause; abandoning the household for more than a year due to the existence of grounds for divorce and not filing for it within that time frame; judicially declared absence or presumption of death; cruel treatment, insults or threats; refusal to financially support spouse; false accusations; the conviction for an ignominious crime under which he or she is sentenced to imprisonment in a penal institution for a term of two years or longer; habitual gambling, drinking or drug use; commission of an act against the spouse that would be criminally penalized if committed against a stranger; desertion for more than two years with the intent to dissolve the marital bond, domestic violence against the spouse or children, failure to comply with administrative orders tending to correct domestic violence.

III.    If the grounds for divorce are those contemplated in section XVII of article 289 (by mutual consent), the parents will agree on the custody of the children.

IV.    If the grounds for divorce are among those contemplated in sections XVIII (desertion for more than two years with the intent to dissolve the marital bond) and XIX (domestic violence against the spouse or children), the children will remain under the parental authority/responsibility (*patria potestas*) of the innocent spouse. However, upon the death of the innocent spouse, the guilty spouse will not be able to regain parental authority/responsibility (*patria potestas*) or custody. The children will then be under the custody of the corresponding ancestor or legal guardian.

**Article 306.** Before ruling on parental authority/responsibility (*patria potestas*) or guardianship of the children, they may be benefited by any measure the judge dictates in their favor, upon the request of grandparents, uncles, aunts or older siblings.

**Article 307.** The father and the mother are bound by all the obligations they have towards their children, even if they lose parental authority/responsibility (*patria potestas*).

**Article 309.** Upon divorce of the parents, the matter will proceed to the division of Common Good where necessary precautions will be taken to administer pending obligations between the parents or guardians of the children to contribute in proportion their income for the sustenance and education for male children until they reach adult age. For girls until they marry under the condition they live an honest life. In the event familial patrimony is constituted according to the rules of this code, the executed divorce will be effective and the innocent spouse along with the children will benefit in the case of necessary divorce or the children and the spouse that stays with custody of the children on other cases.

TITLE EIGHTH: ON PARENTAL AUTHORITY/RESPONSIBILITY (PATRIA POTESTAS)
CHAPTER I: ON THE EFFECTS OF PARENTAL AUTHORITY/ RESPONSIBILITY (PATRIA POTESTAS) ON THE CHILDREN

**Article 434.** Respect and mutual consideration shall govern the relationship between parents and children, no matter their state, age or condition.

**Article 435.** Non –emancipated minors are under parental authority/responsibility (*patria potestas*) as long as the ancestors that must exert it according to the Law exist.

**Article 436.** Parental authority/responsibility (*patria potestas*) is to be exerted over the children themselves as well as over their property. Regarding the care and education of the minors, parental authority/responsibility (*patria potestas*) is to be exerted in the manner prescribed by the applicable laws.

**Article 437.** Parental authority/responsibility (*patria potestas*) is exerted by both parents. When due to any circumstance one of them ceases to exert it, it shall be exerted by the other one.

In the absence of both parents or due to another circumstance foreseen by this Code, the ancestors in the second degree (grandparents) shall exert parental authority/responsibility

(*patria potestas*) over the children in the order established by the judge, considering the circumstances of the case.

**Article 439.** In case of separation between those who exert parental authority/responsibility (*patria potestas*), both parents must continue fulfilling their obligations and they can agree on the terms of its exertion, particularly in all things concerning the care and custody of the minors. In case of disagreement, the judge will decide the matter, after hearing a representative of the Attorney General's office for the defense of minors, not withstanding what is established by the state's Code of Civil Procedures.

In abovementioned situation, considering the best interest of the minor, he or she will remain under the care of only one of the parents. The other parent will be obligated to support the minor and will maintain the right of observation and coexistence with him or her, according to what was prescribed by the agreement between parents or according to the judge's order.

**Article 440.** Those who exert parental authority/responsibility (*patria potestas*) have a right to coexist (spend time) with their children, even if they do not have custody, unless it represents a danger to the minor.

Personal relationships between the minor and his or her relatives shall not be impeded without just cause. In case of opposition, and upon the request of either parent, the judge shall rule on the matter considering the best interest of the minor. Only by means of a judicial order may the right of coexistence mentioned in the previous paragraph be limited, suspended or terminated, as well as in the cases of termination or suspension of parental authority (*patria potestas*) according to what was prescribed by the agreement between parents or according to the judge's order.

**Article 441.** The obligations, rights and restrictions established for guardians will apply to any relative that has custody of the minor due to any circumstance. The person still holding parental authority/responsibility (*patria potestas*), will be obligated to contribute with the relative that has the child in custody in all of his or her duties, keeping the rights of coexistence and observation.

The aforementioned custody may be terminated by the decision of the relative who exerts it, by the person or persons holding parental authority/responsibility (*patria potestas*) or by a judicial order.

**Article 442.** Parental authority/responsibility (*patria potestas*) over an adoptive child, adopted under simple adoption, shall only be exerted by the persons who adopt him or her.

**Article 443.** Only by absence or impediment of those who are primarily called to exert parental authority/responsibility (*patria potestas*) shall those who follow exert it in the order established by the previous articles. If only one of the two persons to whom it corresponds to exert parental authority/responsibility (*patria potestas*) is absent, the person remaining will continue in the exertion of this right.

**Article 444.** As long as the child is under parental authority/responsibility (*patria potestas*), he or she shall not leave the house of those who exert it without their permission or by order emitted by an authority legally qualified to do so.

**Article 445.** The persons holding a minor under their parental authority/responsibility (*patria potestas*) or under their custody have the obligation to conveniently educate him or her.

When the administrative authorities receive notice that the said persons are not fulfilling this obligation, they will notify the representative from the Attorney General's Office (*Ministerio Público*) so they take the corresponding procedures.

**Article 446.** In addition to what is prescribed by the previous article; those who exert parental authority/responsibility have the right to discipline the minor and the obligation to behave in a way that sets a good example for the minor.

The right to discipline does not imply the infliction of forceful acts upon the minor which may affect his or her physical or psychological integrity in terms of what is established by article 347 ter of this Code.

**Article 447.** Minors under parental authority/responsibility (*patria potestas*) may not appear before court or contract any obligation without the prior explicit consent of those exerting parental authority/responsibility (*patria potestas*). If these should irrationally refuse, the judge shall rule on the matter.

**Article 448.** Those who exert parental authority/responsibility (*patria potestas*) are the legitimate representatives of the minor and they shall legally administrate the property that belongs to the minor, according to what is prescribed by this Code. When parental authority/responsibility (*patria potestas*) is exerted by both the mother and father, or the grandmother and grandfather or both adoptive parents, the male shall be the administrator and representative.

**Article 449.** Regarding the previous article, the representative shall not negotiate a settlement to trial in which the minor is involved without the prior explicit consent of his spouse and with judicial authorization when the Law expressly requires it.

**CHAPTER III: ON THE WAYS PARENTAL AUTHORITY/RESPONSIBILITY (*PATRIA POTESTAS*) MAY BE TERMINATED OR SUSPENDED.**

**Article 465.** Parental authority/responsibility (*patria potestas*) ceases:

I. By death of the person who exerts it if there is no other person to whom it corresponds;

II. By emancipation of the minor;

III. When the child reaches the age in which he or she is no longer legally a minor.

**Article 444.** Parental authority/responsibility can be terminated:

    I.    When the person exerting parental authority/responsibility (*patria potestas*) is expressly condemned to its loss;

    II.    In cases of divorce, according to what is established by article 305 (above);

III.     When, due to the corrupted morals of the parents, mistreatment or abandonment of their duties, the health, security or morals of the children may be at risk, even when these actions are not penalized under current law;

IV.      When the father or mother exposes the child or when the child is abandoned for more than two months;

V.       When the person exerting parental authority/responsibility (*patria potestas*) is condemned of an intentional criminal offense in which the victim is the minor; and

VI.      When the person exerting parental authority/responsibility (*patria potestas*) is condemned two or more times for the same severe criminal offense.

**Article 466 bis.** . Parental authority/responsibility (*patria potestas*) can be limited when the person who exerts it incurs in behaviors considered as domestic violence in article 347 ter of this Code against the minors.

**Article 467.** Reformed

**Article 468.** Reformed

**Article 469.** Paternal authority/responsibility can be suspended;

I.       Due to a judicially pronounced lack of capacity;

II.      Due to judicially pronounced absence;

III.     Due to a guilty verdict that imposes the suspension as part of the sentence.

Article 470. Paternal authority/responsibility is only waivable in the following cases:

I.       When the parent remarries, and

II.      When the minor is given to a social welfare institution, whether it be private or public, to be put up for adoption.

The grandparents may be excused from exerting parental authority/responsibility when they are 60 years-old or older or when due to a state of regular poor health, they are unable to properly carry out their duties. The ancestor that waives parental authority/responsibility (*patria potestas*) cannot recover it, with the exception of the mother when she is no longer within the marriage that motivated her to waive it.